**LOCAL UNION NO. 11, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Appellant,**

v.

**George H. BOLDT as Chairman of the Pay Board, John T. Dunlop, as Chairman of the Construction Industry Stabilization Committee, and Los Angeles County Chapter, National Electrical Contractors Association, Appellees.**

No. 9–5.

Temporary Emergency Court of Appeals.

Aug. 10, 1973.

Julius Reich, Los Angeles, Cal., Brundage, Neyhart, Miller, Reich & Pappy, Los Angeles, Cal., for appellant.

Paul T. Michael, Atty., Dept. of Justice, Washington, D. C. (Harlington Wood, Jr., Asst. Atty. Gen., William D. Keller, U. S. Atty., Matthew A. Schumacher, Asst. U. S. Atty., with him on the brief), for the Government, appellee.

Kyle D. Brown, Hill, Farrer & Burrill, Los Angeles, Cal., for appellee-National Electrical Contractors Assn.

Before CARTER, CHRISTENSEN and VAN OOSTERHOUT, Judges.

VAN OOSTERHOUT, Judge.

This is a timely appeal by plaintiff, Local Union No. 11, International Brotherhood of Electrical Workers, AFL–CIO (Local 11) from final judgment of the District Court entered February 23, 1973, sustaining defendants' motion for summary judgment and declaring valid a final wage-increase determination of the Construction Industry Stabilization Committee (CISC). The CISC determination approved payment of a wage increase of $1.00 per hour rather than the $1.71 per hour wage increase which was scheduled to be operative June 1, 1972, under the terms of the September 1, 1970 amendment to the Inside Wiremen's Agreement between Local 11 and the Los Angeles Chapter of the National Electrical Contractors Association (NECA). This court has jurisdiction under § 211(b)(2) of the Economic Stabilization Act of 1970 as amended, hereinafter referred to as the Act.

This suit was brought by Local 11 against the Pay Board, CISC and NECA. The issue was the question of whether CISC properly or, in the alternative, constitutionally rejected the negotiated wage increase of $1.71 per hour.

This court has heretofore determined in litigation between the parties that CISC had rendered a final decision that only $1.00 of the $1.71 wage increase contracted for was allowable and approved, and that the demand of Local 11 that the additional 71 cents not approved be placed in escrow was not permissible and constituted a violation of the Act. United States v. International Brotherhood of Electrical Workers, 475 F.2d 1204 (Em.App.1973). Much of the background material and the pertinent law are there set out and will not be repeated here. The constitutional issues

here raised were not reached in our prior decision.

Local 11 is the collective bargaining agent for approximately 6,000 electrical workers in the Los Angeles area. NECA is the bargaining representative of 200 of its member employers. Local 11 and NECA reopened their 1969–1972 collective bargaining contract and entered into a new agreement extending to 1973 on September 1, 1970. The principal changes made in the new agreement were an increase in wages and benefits of $1.71 an hour, effective June 1, 1972, and the liberalization of the right of NECA members to transfer employees to any job within Los Angeles County. Local 11 contends that the wage increase was the inducement for the transfer rights granted the employers. The amended contract is a comprehensive one dealing with the rights and responsibilities of the parties thereto and contains at Article VIII a separability clause which, subject to certain exceptions not here applicable, provides that if any portion of the agreement is declared void all other provisions of the agreement shall continue to be in full force and effect.

The negotiated wage increase was submitted as required by law to CISC. On April 26, 1972, CISC approved $1.00 of the $1.71 wage increase, denying the remaining 71 cents. Local 11, upon request, was granted a rehearing after which CISC adhered to its prior decision. Other facts will be developed to the extent necessary during the course of the opinion.

Local 11 in its present appeal urges that it is entitled to a reversal for the following reasons:

A. CISC disapproval of the wage increase negotiated by the Union is arbitrary, capricious, and in excess of the CISC's authority.

B. The failure to approve the Union's contract is unconstitutional.

1. The failure to approve the Union's contract is a taking of property without just compensa-

tion, in violation of the Fifth Amendment.

\*   \*   \*   \*   \*   \*

2. The failure to approve the Union's contract which was made prior to March 29, 1971, while validating contractors' agreements made prior to March 29, 1971, is a denial of equal protection."

We reject each of such contentions for the reasons hereinafter stated and affirm the judgment.

■ We are satisfied that CISC acted within its jurisdiction in limiting the wage increase of Local 11 members to $1.00 an hour. Congress has declared the policy in § 202 of the Act that it was necessary to stabilize wages. In furtherance of that goal, Congress by § 203 delegated to the President authority to stabilize wages at not less than those prevailing on May 25, 1970. As this court noted in Plumbers Local Union No. 519 v. CISC, 479 F.2d 1052 (Em. App.1973), CISC was created to effectuate the stabilization of wages and prices in the construction industry. The existence, function and authority of the CISC has been repeatedly reaffirmed by the President in the various phases of the construction program. See United States v. International Brotherhood of Electrical Workers, supra.

CISC and the trial court had before it extensive charts showing, commencing in 1960, the wage and fringe benefits of Local 11 and other building and trade unions in the Los Angeles area and also the wage and fringe benefits of electrical unions throughout the State of California. The trial court made appropriate and rational findings of fact and based thereon its conclusion of law, stating:

"CISC's objective was to maintain the historical wage and fringe benefit relationship which had existed between LOCAL 11 and other electrician unions and other building trades unions. In considering the rates of wage and fringe benefits of other

electrician unions and other building trades unions, CISC approved a wage and fringe benefit increase for LOCAL 11 which reasonably reflected that historical relationship. The action of CISC was reasonable and had a rational basis."

Such conclusion is in accord with the applicable law and is based upon substantial evidence.

We now pass to the constitutional issues raised. Before reaching the specific points urged by Local 11, we observe the constitutionality of the Economic Stabilization Act of 1970 as amended and the executive orders and regulations issued thereunder have been repeatedly upheld. Amalgamated Meat Cutters & Butcher Work. v. Connally, 337 F.Supp. 737 (D.D.C.1971); United States v. Lieb, 462 F.2d 1161, 1165 (Em.App. 1972); University of Southern California v. Cost of Living Council, 472 F.2d 1065, 1070 (Em.App.1972). See also CCH Economic Controls, pp. 9054–9058.

■ Local 11's contention that the failure to approve the full wage provided by its contract constitutes taking of property without just compensation in violation of the Fifth Amendment lacks merit. The exercise of appropriate regulatory powers has never been held to constitute a taking which would require compensation under the Fifth Amendment. Bowles v. Willingham, 321 U.S. 503, 517–518, 64 S.Ct. 641, 88 L.Ed. 892 (1944); Legal Tender Cases, 79 U. S. (12 Wall.) 457, 551–552, 20 L.Ed. 287 (1870); Wilson v. Brown, 137 F.2d 348 (Em.App.1943).

In reality, Local 11 appears to be arguing that the Government has unlawfully impaired the obligation of its contract. Such argument is persuasively rejected in Amalgamated Meat Cutters v. Connally, supra, 337 F.Supp. at 763–764.

■ The essence of Local 11's equal protection argument is that CISC has unlawfully discriminated against the employees and in favor of the employers in disallowing the employees the full negotiated wage increase, while at the same time permitting the employers to obtain windfall profits on the basis they have considered the contractual wage increase in entering into contracts with their customers.[1] There is no evidence in the record to support a finding that any such windfall profits have been realized. 6 C.F.R. § 300.58, as originally published, required renegotiation of contracts with customers entered into after March 29, 1971, to reflect any wage cuts made by CISC. The March 29, 1971, date was deleted in an amendment to the regulation on November 23, 1972. Local 11 charges the amendment is not retroactive, while appellees claim retroactivity. We need not resolve the retroactivity issue as there is no evidence in the record to support a finding that any contractor derived windfall profit arising out of the disallowance of the wage increase in excess of $1.00.

■■ Moreover, a fundamental basis for any argument based on equal protection is that persons who are similarly situated are treated differently under the law. Prices charged customers by contractors concern primarily the customer. The CISC and the trial court determined on the basis of substantial evidence that the wage increase allowed placed the local union employees in a favorable position compared with other electrical workers in California and with comparable laborers in the Los Angeles area.

Classifications such as those involved in the instant case must be upheld if the court can perceive any rational basis for the distinctions which they draw. "It is enough that the [Government's] action

---

1. The equal protection clause of the Fourteenth Amendment by its terms applies only to states. However, the Supreme Court has held that lack of equal protection may be so discriminatory as to constitute a violation of due process. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

be rationally based and free from invidious discrimination." Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). The burden is upon Local 11 to show that the treatment or classification made is without rational basis or invidious in nature. Dandridge v. Williams, supra; Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). No such showing has been made in this case.

As stated in Williamson v. Lee Optical Co., supra:

"The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.

\* \* \* \* \* \*

"The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Tigner v. Texas, 310 U.S. 141 [60 S.Ct. 879, 84 L.Ed. 1124]. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. Semler v. Dental Examiners, 294 U.S. 608 [55 S.Ct. 570, 79 L.Ed. 1086]. The legislature may select one phase of one field and apply a remedy there, neglecting the others. A. F. of L. v. American Sash Co., 335 U.S. 538 [69 S.Ct. 260, 93 L.Ed. 222]. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. . . ." 348 U.S. 488, 489, 75 S.Ct. 464, 465. See also Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1077–87.

The classifications apparent in the instant case certainly comport with the expansive due process and equal protection standards set forth in Williamson and other similar Supreme Court cases.

The judgment is affirmed.