R. L. GRIFFIN, Plaintiff-Appellant,

v.

UNITED STATES, Defendant-Appellee.

Maurice LAMPE, Plaintiff-Appellant,

v.

UNITED STATES, Defendant-Appellee.

Elbert GRIFFIN, Plaintiff-Appellant,

v.

UNITED STATES, Defendant-Appellee.

Nos. 10–8, 10–9 and 10–10.

Temporary Emergency Court of Appeals.

Submitted April 27, 1976.

Decided June 8, 1976.

Charles R. Nesbitt, Oklahoma City, Okl., on the brief for plaintiff-appellant.

Linda Pence, Atty., Dept. of Justice, with whom Rex E. Lee, Asst. Atty. Gen. and Stanley D. Rose, Dept. of Justice, Washington, D. C., were on the brief for defendant-appellee.

Before CHRISTENSEN, VAN OOSTERHOUT and HASTINGS, Judges.

CHRISTENSEN, Judge.

These actions were brought in the district court by the above-named plaintiffs to obtain money judgments against the United States for the alleged taking of their property as a result of the operation of the two-tier pricing regulations on crude oil[1]

---

1. In 1973 the Cost of Living Council, under its responsibility to develop and implement a program designed to carry out the provisions of the Economic Stabilization Act, P.L. 91–379 (Aug. 15, 1970) as amended, promulgated the two-tier price regulations governing the price structure at which producers could sell domestic crude oil. Thereafter, the system was continued by the Federal Energy Office and now is administered by the Federal Energy Administration pursuant to the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 et seq. (Supp.1973), as amended. The two-tier pricing system for crude oil was promulgated to minimize the inflationary impact of world-wide oil prices and to provide an incentive for increased domestic production of crude oil. As originally conceived it imposed a ceiling price of $5.25 per barrel on "old" oil and allowed new and released oil to be sold without regard to the ceiling price. The detailed discussions of the system in various aspects contained in *Cities*

administered by the Federal Energy Administration under the Emergency Petroleum Allocation Act (EPAA).[2]

Plaintiffs are non-operating (royalty) owners of part of the production from certain oil wells in Marshall County, Oklahoma. Each plaintiff alleged that by reason of the two-tier scheme he had been prohibited from selling his oil at a price above $5.25 per barrel while at the same time the crude oil produced from nearby leases, and elsewhere in Oklahoma and the United States, was permitted to be sold at the free market price of up to $14.00 per barrel. Each further alleged that but for this price control he could have sold his oil at the higher price.[3] Plaintiffs further asserted in effect that the two-tier price system was discriminatory toward them, that it was unnecessarily and unreasonably burdensome to them, that it singled out a group of property owners, including themselves, for especially onerous treatment not shared by all those similarly situated, and that in its operation it constituted a partial taking by

physical appropriation for public purposes of plaintiffs' property and property rights—their shares of crude oil produced from the leases.

The United States moved for consolidation of the suits, which motion was granted; also for their dismissal on jurisdictional grounds, and for dismissal for failure to state claims on which relief could be granted or in the alternative for summary judgment on the merits. The district court held that it had jurisdiction by virtue of the Tucker Act[4] and Section 210(a) of the Economic Stabilization Act.[5] It further concluded that neither dismissal on the pleadings nor summary judgment was warranted because there were unresolved issues of fact as to whether there had been a "taking" and because it could not be concluded that plaintiffs' claims were totally devoid of merit.[6] Finally, the district court certified to this court, pursuant to § 211(c) of the Economic Stabilization Act Amendments of 1971,[7] the following question:

*Service Co. v. FEA,* 529 F.2d 1016 (Em.App. 1975); *Pasco, Inc. v. FEA,* 525 F.2d 1391 (Em. App.1975); *Consumers Union v. Sawhill,* 525 F.2d 1068 (Em.App.1975); and *Nader v. Sawhill,* 514 F.2d 1064 (Emp.App.1975), are instructive in the present context but need not be repeated here.

2. The EPAA was amended and extended by the Energy Policy and Conservation Act (EPCA), P.L. 94–163 (Dec. 22, 1975), 2 CCH Energy Management ¶ 10,850. The EPCA *inter alia* extends basic petroleum allocation authority contained in the EPAA and the new oil pricing provisions described in the EPCA for 40 months, will convert the oil price control and allocation authority to standby status at the end of that period and provides that the standby authority shall terminate five years after enactment.

3. Regulations adopted under the Energy Policy and Conservation Act of 1975 temporarily rolled back the new oil price to $11.28, and there will be further adjustments as the guidelines established by the EPCA are pursued. 2 CCH Energy Management ¶ 12,589 at 12,997–3.

4. 28 U.S.C. § 1346. "(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of: . . . (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded ei-

ther upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages not sounding in tort. . . ."

Cf. 28 U.S.C. § 1491. "The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . ."

5. "Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ or injunction (subject to the limitations in section 211) and/or damages.

6. *Griffin v. United States,* Nos. 75–84–C, 75–85–C, 75–86–C (E.D.Okla. Feb. 10, 1976).

7. 12 U.S.C.A. § 1904 note, P.L. 92–210, incorporated by reference into the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 754.

Have royalty owners, whose crude oil is subject to the ceiling price as determined under the regulations (10 C.F.R. §§ 212.-72–212.74) and who may not sell their crude oil at a price in excess of the ceiling price, had their property taken for public use for which they may recover just compensation from the United States pursuant to the Fifth Amendment to the Constitution of the United States?

Although designated as "appellants" in the government's brief, plaintiffs disaffirm that posture except for the purposes of compliance with TECA Rule 16 (formerly Rule 31).[8] They say essentially that they were the prevailing party below;[9] that the lower court committed no error except by acceding to the suggestion of the United States that the constitutional issue be certified to this court; that "this is a simple Tucker Act case" involving only the fact questions of whether plaintiffs' properties were taken by the United States and the value of any property found to be so taken; and that, except for its apprehension of some constitutional obstacle, the district court was right in holding that a trial on the merits was required.

We are assured by plaintiffs that we need not be concerned with our prior decisions holding, or accepting such conclusion as the premise for related determinations, that the two-tier pricing system does not involve any unconstitutional taking.[10] They tell us that they do not contest the constitutionality of the FEA regulations; indeed, that they concede their constitutionality, and say that they necessarily must so do to be entitled to Tucker Act compensation, citing

*Tempel v. United States,* 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162 (1918); *United States v. Georgia Marble Co.,* 106 F.2d 955 (5th Cir. 1939), and *Kirk v. United States,* 451 F.2d 690 (10th Cir. 1971), cert. denied, 406 U.S. 963, 92 S.Ct. 2059, 32 L.Ed.2d 350 (1972), to demonstrate that "any taking or destruction of property which is contrary to or unauthorized by Act of Congress would constitute a tortious injury to property for which compensation cannot be recovered under the Tucker Act." They say that their cases depend not upon the unconstitutionality of the regulation but upon factual problems which can be resolved only by trial and suggest that at trial they can show severe impact against them of what they characterize as discriminatory pricing. Thus plaintiffs conclude that only fact issues are involved and that the district court's certification of the constitutional question was unjustified.

■ With the latter conclusion although not with the reasoning by which it was reached, the government agrees. It argues that certification was improvidently granted because no substantial constitutional issue exists, the constitutionality of the pricing system already having been sustained by this court. It fails to consider that, if this were so, remand without further determination on our part might be called for [11] —a disposition that would be welcomed by plaintiffs since it would remit them for trial to a district court apparently favorable to their position on the law. To the contrary, the government asks us to determine "that the district court erred in not granting its

---

**8.** (b) When a constitutional issue is certified by a district court the clerk will upon receipt thereof from the district court notify the plaintiff in the district court, who shall promptly pay the docket fee, after which the case will be placed on the docket. . . .

(d) The brief of the party who was plaintiff below shall be filed within 20 days after the certificate has been filed with the court.

**9.** Such designations have no significance in the present context except for identification purposes. We shall here refer to plaintiffs as such, rather than as appellants.

**10.** *Cities Service Co. v. FEA,* 529 F.2d 1016 (Em.App.1975), *supra; Pasco, Inc. v. FEA,* 525 F.2d 1391 (Em.App.1975), *supra; Consumers Union v. Sawhill,* 525 F.2d 1068 (Em.App.1975), *supra; Nader v. Sawhill,* 514 F.2d 1064 (Em. App.1975), *supra.*

**11.** *Shapp v. Simon,* 510 F.2d 379 (Em.App. 1975); *National Petroleum Refiners Assoc. v. Dunlop,* 486 F.2d 1388 (Em.App.1973). Cf. *Condor Operating Co. v. Sawhill,* 514 F.2d 351 (Em.App.), cert. denied, 421 U.S. 976, 95 S.Ct. 1975, 44 L.Ed.2d 467 (1975), *supra.* See also, *Carpenters 46 Cty. C. Bd. v. Construction Ind. St. Com.,* 522 F.2d 637 (Em.App.1975).

[the government's] motion to dismiss or in the alternative for summary judgment." And it argues on the basis of *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), that looking at the language of § 211 of the Stabilization Act and its legislative history, and considering the special nature of price controls, Congress intended to withdraw the Tucker Act remedy to parties in the position of plaintiffs—a proposition which if essential to counter plaintiffs' claims might itself raise a constitutional problem.[12]

As if this welter of points and counterpoints were not enough, the government asks us to determine that the district court had no jurisdiction to entertain plaintiffs' suits in the first instance and thus that we have no appellate jurisdiction. The possible expanse of such a bar is indicated by its further argument that any right plaintiffs might have for monetary relief under the Tucker Act would be in effect cut off by the exclusivity of EPAA processes which afford to private parties against the government only the declaratory or injunctive relief provided by § 211 of the Economic Stabilization Act.

## JURISDICTION

The government contends that § 210 does not authorize any type of suit against the government but only "private" actions for declaratory, injunctive or monetary relief and that § 211 is merely a limitation of that right and not a complementary grant of jurisdiction to the district courts. *Air Products and Chemicals, Inc. v. United Gas Pipeline Co.*, 503 F.2d 1060, 1063 (Em.App.1974); *Brennan Petroleum Products Co., Inc. v. Pasco Petroleum Co., Inc.*, 373 F.Supp. 1312, 1313 (D.Ariz.1974); *McGuire Shaft and Tunnel Corp. v. Local No. 1791, UMW*, 475 F.2d 1209 (Em.App.), *cert. denied*, 412 U.S. 958, 93 S.Ct. 3008, 37 L.Ed.2d 1009 (1973), and *Gas-A-Tron of Arizona v. Union Oil*, 1 CCH Energy Management ¶ 9710, and certain legislative history[13] are cited in support of this contention.

Plaintiffs counter that there is no such limitation by the terms of the Act and that the restriction (of § 210 (a)) to "private suits" as suggested by the legislative history and dicta in some of our decisions must be deemed to relate only to the recovery of treble damages or other relief against persons renting property or selling goods or services pursuant to § 210(b). They also contend that § 211 operates in their case merely to waive the jurisdictional amount limitation of the Tucker Act, and that their entitlement to sue basically rests upon the broad language of § 210(a).

 We think on the question of jurisdiction that plaintiffs are nearer the mark. But the positions of both parties fail to collate and reconcile sufficiently the two sections, which present a harmonious treat-

**12.** Before the district court the government had contended in the rail reorganization litigation that the law was constitutional because the Tucker Act afforded a remedy by way of just compensation for any private property taken in its execution. See *Connecticut Gen. Ins. Corp. v. United States Ry. Ass'n*, 383 F.Supp. 510 (E.D.Pa.), *rev'd sub nom. Regional Rail Reorganization Act Cases*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), in which a three-judge District Court held the law unconstitutional because it found the Act negated any Tucker Act remedy for just compensation (419 U.S. at 119, 95 S.Ct. 335). The Supreme Court reversed, indicating that governmental regulation of private property may amount to a taking for which the 5th Amendment would require just compensation; that the Tucker Act must be deemed available as a remedy unless jurisdiction thereunder was affirmatively withdrawn; that the Rail Act contained no specific language withdrawing Tucker Act jurisdiction; and that since amendments by implication are disfavored, and a construction upholding constitutionality must be adopted if possible, there was no implied withdrawal of Tucker Act jurisdiction.

**13.** "Section 210 provides a judicial method by which violators of regulations may be discovered and other would-be violators may be deterred. This can be accomplished by authorizing a person suffering illegal wrong to bring a treble damage action against the violator."

"This action is intended to be brought by private persons against other private persons. The Government will not bring such action nor be the subject of one. . . . " S.Rep.No.92–507, 92d Cong., 1st Sess. (1971), U.S.Code Cong. & Admin.News, 2283, 2291.

ment of both jurisdiction of the respective courts and the right of aggrieved persons to bring actions for "legal wrongs" arising out of acts, practices, orders or regulations under EPAA. Assuming that plaintiffs are right in considering that § 211[14] removes the jurisdictional amount bar that would otherwise apply to two of the claims, that section serves the more basic purpose also of establishing the overall jurisdiction of the courts involved, with implementing exclusivity and limitation provisions that must be read independently as well as in relation to § 210.[15] Subdivision (a) of the latter section deals with the specified right of those suffering "legal wrong" to sue, thus utilizing the jurisdiction afforded by § 211. And § 210(b) deals with a specified type of legal wrong. As so read, the two sections furnishing the basis of the involvement of the courts and the right to judicial relief on the part of affected private parties are con-

14. § 211. Judicial review

(a) *The district courts of the United States* shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders, issued thereunder, notwithstanding the amount in controversy; except that nothing in this subsection or in subsection (h) of this section affects the power of any court of competent jurisdiction to consider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by any agency under this title) raised in any proceeding before such court. If in any such proceeding an issue by way of defense is raised based on the constitutionality of this title or the validity of agency action under this title, the case shall be subject to removal by either party to a district court of the United States in accordance with the applicable provisions of chapter 89 of title 28, United States Code.

(b)(1) There is hereby created a court of the United States to be known as the Temporary Emergency Court of Appeals . . . . Except as provided in subsection (d)(2) of this section, the court shall not have power to issue any interlocutory decree staying or restraining in whole or in part any provision of this title or the effectiveness of any regulation or order issued thereunder. In all other respects, the court shall have the powers of a circuit court of appeals with respect to the jurisdiction conferred on it by this title.

. . . . .

(d)(2) A district court of the United States or the Temporary Emergency Court of Appeals may enjoin temporarily or permanently the application of a particular regulation or order issued under this title to a person who is a party to litigation before it. . . .

(e)(1) *Except as provided in subsection (d) of this section, no interlocutory or permanent injunction restraining the enforcement, operation, or execution of this title, or any regulation or order issued thereunder shall be granted by any district court of the United States or judge thereof. Any such court shall have jurisdiction to declare* (A) that a regulation of an agency exercising authority under this title is in excess of the agency's authority, is arbitrary or capri-

cious, or is otherwise unlawful under the criteria set forth in section 706(2) of title 5, United States Code, or (B) that an order of such agency is invalid upon a determination that the order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence. . . .

15. § 210. Suits for damages or other relief

(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

(b) In any action brought under subsection (a) against any person renting property or selling goods or services who is found to have overcharged the plaintiff, the court may, in its discretion, award the plaintiff reasonable attorney's fees and costs, plus whichever of the following sums is greater:

(1) An amount not more than three times the amount of the overcharge upon which the action is based, or

(2) not less than $100 or more than $1,000; except that in any case where the defendant establishes that the overcharge was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to the avoidance of such error the liability of the defendant shall be limited to the amount of the overcharge; Provided, that where the overcharge is not willful within the meaning of section 208(a) of this title, no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller or renter a bona fide claim for refund of the overcharge and has not received repayment of such overcharge within ninety days from the date of the presentation of such claim.

(c) For the purposes of this section, the term "overcharge" means the amount by which the consideration for the rental of property or the sale of goods or services exceeds the applicable ceiling under regulations or orders issued under this title.

sistent and comprehensive. They thus should be construed in accordance with their terms; and, again, we should not be quick to assume accidental or careless language on the part of the Congress where considerate purpose may be seen in the words it employed.[16]

■ The fact that "private suits" such as those brought by plaintiffs name as defendant, and seek monetary damages against, the United States no more renders them public suits than are claims brought by private individuals to recover damages against the United States, for example, under the Tort Claims Act. The characterization of such suits as something other than private suits contemplated by § 210(a) even though it is assumed they involve legal wrong arising under EPAA, and precluding any action against the government pursuant to the latter section[17] seem difficult to justify.[18]

We believe that if or to the extent plaintiffs suffered legal wrong because of any taking of their property as a result of the two-tier oil pricing system, they would have the right to utilize the jurisdiction afforded in the district court by § 211 by bringing the type of action contemplated by § 210(a) for damages, there being no limitations in § 211 to the contrary.

### CERTIFICATION

■ We have also concluded that the constitutional problem certified by the district court is not insubstantial. It is to be observed that heretofore we have not been directly confronted with the contention that the two-tier pricing system, as such and in its broad aspects, is unconstitutional by reason of invidious discrimination and as a taking of property contrary to the Fifth Amendment. Our consideration of the problem has been in relation to narrower aspects, such as the Old Oil Entitlement Program as applied to major refiners (*Cities Service*), as applied to small refiners (*Pasco*), the freeze of supplier-purchaser relationships (*Condor*), the statutory mandate for "regulating" new oil prices (*Consumers Union*), and the propriety of increasing the controlled price of old oil (*Nader*). Notwithstanding our sustaining of the constitutionality of aspects of the program against general claims that it operated to take private property without just compensation contrary to the Fifth Amendment, plaintiffs' contentions in the context of the Tucker Act involve a new dimension and approach which as far as we have been able to determine is of first impression. Sheer novelty of a legal contention does not underwrite its substantiality, but it does mili-

16. Cf. *Exxon Corp. v. FEA*, 516 F.2d 1397 (Em. App.1975).

17. Appellee's counsel at oral argument: ". . . We disagree with the district court. We do not think that § 210 provides jurisdiction for a direct action against the government. We disagree with appellants' contention that the Tucker Act provides jurisdiction.

"Question from the Court: On your jurisdiction issue, you wouldn't controvert the one under $10,000 would you?

"A. No, Sir.

"Q. So that at least the issues are raised as to one under $10,000; we can't get rid of that on jurisdiction?

"A. Right . . . The only jurisdictional statute for a direct action against the government is § 211 . . . The core issue is whether the two-tier pricing system constitutes a taking. . . .

18. Question from the Court during oral argument: "Let us assume here that the plaintiffs are correct in saying that there was a taking for which they were entitled to compensation somehow and somewhere. If your position of jurisdiction was right would they not be entirely without a remedy?—They couldn't go to the Court of Claims because it would be liability arising under the Petroleum Act; and you say they could not come . . . to the district court under the Petroleum Act because there is no way . . . that they can sue the government for money damages . . .

"A. . . . Let's assume there's a compensable taking . . . the remedy is to come in and sue the Federal Energy Administration and have the two-tier pricing system declared unconstitutional—

"Q. No, no. The taking has already been accomplished. What you're suggesting is that they preclude further taking but what they want is compensation for past taking.

"A. In that case . . . the district court has exclusive jurisdiction and you have exclusive jurisdiction of the appeal . . . The remedy they have would not be for past damages but to declare the regulatory scheme itself unconstitutional."

tate against summary application of the doctrine of *stare decisis* and may commend the reading of smaller print as well as the caption.

While our attention has been called to no case where the award of damages based upon losses suffered as the result of the operation of a regulatory system within the police power have been finally approved, Mr. Justice Holmes' oft quoted language has been interpreted to suggest as much.[19] On the contrary, however, what he could have had in mind was the propriety of the continued operation of the regulations rather than the remedy of compensation for an unauthorized taking. This applies also to other cases cited by plaintiffs.[20] *Regional Rail Reorganization Cases* is in the context of possible compensation for a taking, although the facts are essentially different. Plaintiffs say that their cases involve such oppressive circumstances on the facts as to demonstrate that there has been a compensable taking within the reach of the statements relied upon. Whether there are facts within the scope of the complaint that could justify such a result despite prior decisions upholding the constitutionality of the regulations in question against other attacks, seems an inquiry worth confronting along the flank of the primary issue as we see it—the effect of our prior decisions upholding the validity of the two-tier system.

Nor has the argument relied upon by plaintiffs been presented heretofore in the context of the constitutional problem that would be confronted were a claim for Tucker Act damages accepted by a district court in the sense of preemption through the judicial review processes of the Economic Stabilization Act adopted in EPAA, but reject-

ed because those provisions do not permit adjudication of such a claim, however meritorious. There are also important related concerns which go to the very viability of statutes and regulations designed to cope with the national energy crises or other emergencies through allocations or price controls. For these reasons we think it would be inappropriate to remand the case to the district court on the view that the constitutional question certified is frivolous or insubstantial.

## THE PROBLEM OF "A TAKING"

The district court, apart from the constitutional question that it perceived, denied the defendant's motion to dismiss or in the alternative for summary judgment, indicating its view that there could be facts shown by evidence to establish that plaintiffs' property had been taken contrary to constitutional guarantees.

We agree with appellants that should any state of facts fairly to be contemplated within the scope of the complaints indicate that there might have been an unconstitutional taking of plaintiffs' property, the question certified by the district court would have to be answered in the affirmative and the case remanded for trial on the merits.[21] If, on the contrary, it is apparent as a matter of law that under facts reasonably to be contemplated within the purview of the complaints the plaintiffs cannot prevail on the theory thereby revealed, the answer to the questions should be in the negative. We do not deal with mere abstractions in responding to certified constitutional issues, however worded, and we need not close our eyes to pendant considerations or consequences.[22]

---

**19.** ". . . [W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922).

**20.** *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958); *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), and *Block v. Hirsh,* 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921). Cf. *Monarch Inc. Co. v.*

*District of Columbia,* 353 F.Supp. 1249 (D.D.C. 1973).

**21.** Material fact problems, as the trial court recognized, are not to be resolved on motions to dismiss or for summary judgment. Fed.R. Civ.P., rules 12(b)(6), 56.

**22.** Section 211(c), *supra,* reads in part: ". . . Upon such certification, the Temporary Emergency Court of Appeals shall determine the appropriate manner of disposition which may

## THE ALLEGED FACT RESIDUALS FOR TRIAL

Aside from the mere characterization "discriminatory", we cannot find in the complaints any indication of circumstances that would place the plaintiffs in a position essentially different than that of the refiners attacking the entitlement program in *Cities Service and Pasco*. Counsel for appellants has been hard put to suggest any.[23] The price disparity under which the objectors must do business is the gist of the complaint in each case. Plaintiffs' brief refers vaguely to undisclosed "facts" which might be presented if a trial were to be had to demonstrate that there was an actual taking by the operation of the two-tier pricing program. The only type of evidence which plaintiffs' counsel suggested at oral argument as being within the scope of the complaints and beyond that of which we

could take judicial notice, went to matters of policy, wisdom or overall effect of the regulations.[24]

We are convinced that the exploration by the district court of such matters would not only be futile but gratuitous, and could not alter the results of the cases. This would no doubt be so even though the district court might invest a substantial part of the months or even years the agency, with its extensive personnel, its administrative authority and responsibility and its presumed expertise has devoted to such problems.

## THE DECISIVE PROBLEM OF LAW

The fatal flaw in plaintiffs' position is the assumption that the operation of the two-tier pricing system is lawful and constitutional and yet that it would give rise to an action for damages under the Tucker Act. The theory that their cases

include a determination that the entire action be sent to it for consideration or it may, on the issues certified, give binding instructions and remand the action to the certifying court for further disposition." See also *Condor Operating Co. v. Sawhill*, 514 F.2d 351 (Em.App.), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1975, 44 L.Ed.2d 476 (1975), *supra*.

23. At the oral argument the following colloquy between plaintiffs' counsel and the court occurred:
Q. You mention that the royalty owners are the "forgotten people". Is the situation of a royalty owner in character or kind essentially different than the situation of a well operator or a refiner with reference to the two-tier pricing system.
A. Slightly as to a well operator because the royalty owner pays no part of operating expense.
Q. Why would that differentiation put you in a different position? . . .
A. Because the royalty owner has no control over the maneuvering to get the higher price, and there is considerable of it . . . the drilling of additional wells and all of these things. . . .
Q. But if your argument is true with respect to royalty owners would it not also be correct as far as the operator is concerned?
A. Yes.

24. ". . . [W]hat within the scope and purview of your pleading which is a limiting factor could you prove which would show that in your case there was a taking that couldn't be relied on as a matter of law in any case.

A. Give me just a moment to answer—
Q. Just tell us what you would prove within the purview of your pleadings at the trial that we couldn't take notice of now in determining the question as a matter of law.
A. We will be able to prove that first the two-tier system as it developed . . . with the widespread—it's a matter of magnitude—
Q. We can take judicial notice of that . . But tell me what peculiar proof you have which sets your case apart from all other cases.
A. . . . [W]e will prove that the two-tier pricing system in its practice discourages exploration and does not encourage it. The increased production of oil and gas it does not encourage. It rewards sloth and wastefulness in production rather than the reverse.
Q. That's a matter of policy. Are those the only type of things?
A. Permit me to disagree. Those are the matters that tend to show a taking. . . .
Q. Then you'll prove the disparity and then you'll prove the regulation is not wise because it discourages rather than encourages production. What else would you prove?
A. And we will prove that the purpose of the regulation is indeed to fight inflation but it does not apply equally to all persons similarly situated but a group of property owners including my clients are sought out to bear the brunt of a regulation.
Q. What could you prove that we could not take judicial notice of?
A. Little or nothing. . . . You know as well as I do. . . . That is going to be the thrust of our testimony.

are comparable to actions in reverse condemnation is unsound. No implied contract can be constructed in the context of this case. If the operation of the regulations is constitutional, as we have held, because it does not involve a taking of property without just compensation but constitutes a legitimate exercise of the police power, the admission of this premise by the plaintiffs cannot convert the non-taking into a compensable taking.[25] No sufficient reasons appearing to the contrary, we conclude that our previous rulings upholding in principle the validity of the two-tier system and related regulations as involving no unconstitutional taking and as being otherwise valid control the present cases. And the broad

point being so vital to the continuing statutory and regulatory structure,[26] we are constrained notwithstanding plaintiffs' somewhat oblique attack, to reiterate expressly in the broad context of the present cases that the two-tier oil pricing system is constitutional both as indicated by our prior rulings and because of the reasons set out in those rulings with reference to closely related problems.[27]

Accordingly, in response to the certified question, we hold in the context of these cases that royalty owners whose crude oil was subject to the ceiling price as determined under the regulations in question (10 C.F.R. §§ 212.72–212.74) and who may not sell their crude oil at a price in excess of the

**25.** Plaintiffs say that in such cases as *Cities Service Co. v. FEA*, 529 F.2d 1016 (Em.App. 1975), *supra*, *Western States Meat Packers Ass'n, Inc. v. Dunlop*, 482 F.2d 1401 (Em.App. 1973), and *Local No. 11, IBEW v. Boldt*, 481 F.2d 1392 (Em.App.1973), "the courts in effect are saying that the fact that federal regulatory action results in a taking of private property does not render it invalid or unconstitutional . . . [because] if a person believes his property has been taken, he can always sue for its value." We do not agree. To the contrary, the cases cited held that the regulations therein question were valid because among other things they did not involve a taking and thus were constitutional. See also *Condor Operating Company v. Sawhill*, 514 F.2d 351 (Em. App.) *cert. denied*, 421 U.S. 976, 95 S.Ct. 1975, 44 L.Ed.2d 467 (1975), *supra*, to the same effect.

**26.** In both the EPAA (see H.R.Conf.Rep. No. 93–682, U.S.Code Cong. & Admin.News, 93rd Cong., 1st Sess., p. 2688, 2702 (1973)), and the EPCA (see its § 401(a); also Senate Conf.Rep. No. 94–516, U.S.Code Cong. & Admin.News, 94th Cong., 1st Sess., p. 1956 (1975)); Congress accepted a continuation of the two-tier pricing system as an essential part of price controls until phased out as directed by the last-mentioned Act. It seems likely that the government is right in its argument that the power to regulate prices at all could not survive if plaintiffs' theory of compensation were to prevail. If those whose property values were diminished by price controls in the sense that plaintiffs' claim theirs have been must be awarded compensation for their "loss" of profits under an implied contract theory or otherwise, legislative attempts to control prices would be frustrated. In considering such "losses", particularly in connection with the oil allocation pro-

gram, there seems no possibility of weighing the complex factors that would be involved in achieving any balance of the immediate detriments and overall benefit. Inbuilt into the two-tier system have been entitlements, and exceptions relief (see *e. g., Cities Service, supra, Pasco, supra,* and *Amtel, Inc. v. FEA*, 536 F.2d 1378 (TECA No. 5–15, May 25, 1976)), for promoting competition and ameliorating inequities and hardships to the extent deemed practical and consistent with statutory objectives. The EPCA has established guidelines based upon a continuation of the two-tier system as controlled by a composite pricing formula and continuing overview by the Congress pending the phasing out of controls. In line with continuing responsibilities under the latest Act, the agency is pursuing additional administrative measures in an effort better to achieve the objectives of the program, as manifested by pending rule making, following two prior phases, in the "Third Stage of Implementation of the Energy Policy and Conservation Act" (see CCH Energy Guidelines ¶ 12,612). The current statutory treatment and such continuing efforts could be thrown into confusion if plaintiffs' contentions were ultimately approved. The wisdom, or lack of wisdom, of congressional policy within constitutional limitations is not our concern. But needless shadowing of that policy by any failure to address directly the issues necessarily before us would be unjustified.

**27.** See particularly *Cities Service Co. v. FEA*, 529 F.2d 1016, 1025–29 (TECA 1975), *supra*; *Pasco, Inc. v. FEA*, 525 F.2d 1391 (TECA 1975), *supra*; *Condor Operating Co. v. Sawhill*, 514 F.2d 351, 359–62 (TECA), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1975, 44 L.Ed.2d 467 (1975), *supra*. See also *Western States Meat Packers Ass'n, Inc. v. Dunlop*, 482 F.2d 1401, 1403–06

ceiling price have not had their property taken for public use for which they may recover compensation from the United States pursuant to the Fifth Amendment to the Constitution of the United States, or at all.

In view of this answer it is obvious and pendant in the same context [28] that plaintiffs' complaints should be dismissed for failure to state claims on which relief could be granted.

Remanded to the district court with directions to dismiss the complaints.

(TECA 1973), *supra*; *Local No. 11, IBEW v. Boldt*, 481 F.2d 1392, 1395–96 (TECA 1973).

28. 12 U.S.C. § 1904 note, § 211(c).