**FLORIDA POWER & LIGHT COMPANY, Plaintiff,**

v.

**BELCHER OIL COMPANY et al., Defendants.**

No. 77–5251–Civ–CA.

United States District Court, S. D. Florida.

March 22, 1979.

Patricia A. Seitz, Dean C. Colson, Richard C. Smith, Steel, Hector & Davis, Miami, Fla., for plaintiff.

Samuel J. Powers, Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, Fla., for defendant Belcher Oil.

Elihu H. Berman, MacFarlane, Ferguson, Allison & Kelly, Clearwater, Fla., for intervenors Zenith and Musial.

## MEMORANDUM OPINION ON INTERVENTION

ATKINS, Chief Judge.

Zenith Industries Co., Inc. ("Zenith") and Stan Musial and Biggie's, Inc. ("Musial") have moved, pursuant to Rule 24 of the Federal Rules of Civil Procedure, for inter-

vention in the above captioned lawsuit of Florida Power & Light Company vs. Belcher Oil Company, et al. The action had been stayed by Order of this Court dated December 29, 1977, pending resolution of an administrative enforcement proceeding conducted by the Department of Energy. This Court entered an Order denying the motion for intervention on February 16, 1979. Zenith and Musial then moved for rehearing and reconsideration, which this Court denied on March 8, 1979. This Opinion supplements those Orders.

In the present action, Florida Power & Light seeks treble damages pursuant to 12 U.S.C. § 1904 note, the Economic Stabilization Act of 1970, as amended, and the Emergency Allocation Act of 1973, based on alleged overcharges. The intervenors allege that during the years 1973–75, they purchased large quantities of electric utility service from Florida Power & Light. They contend that this constitutes a direct, substantial and legally protectible interest, which is not adequately represented by Florida Power & Light, and thus is of such a nature to justify intervention as a matter of right under Rule 24(a).

The intervenors also argue that if they are not found to possess a right under 24(a), this Court should exercise its discretion and permit them to intervene under Rule 24(b). For the following reasons, this Court rejects the intervenors' arguments.

## I.

### STANDING

██ Subsection (b) of § 210 of the Economic Stabilization Act provides that:

"In any action brought under subsection (a) against any person renting property or selling goods or services who is found to have overcharged the plaintiff, the court may, in its discretion, award the plaintiff reasonable attorney's fees and costs, plus whichever of the following sums is greater:

(1) An amount not more than three times the amount of the overcharge upon which the action is based, or  .  . . ."

The intervenors claim they have standing under § 210 of 12 U.S.C. § 1904 note, despite the fact the clear language of subsection (b) which refers to any person "who is found to have overcharged the plaintiff." Zenith and Musial cite the case of *Griffin v. United States*, 537 F.2d 1130 (T.E.C.A.1976), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 286 (1977), to support this proposition.

In *Griffin*, the court allowed the plaintiff standing to hear actions against the United States for alleged taking of their property as a result of the operation of a two-tiered pricing system on crude oil, despite the government's contention that the court had no jurisdiction under § 210. In trying to construe the intent of Congress in aiding the correct implementation of the statute, the court stated that § 210(a):

". . . deals with the specified right of those suffering 'legal wrong' to sue, thus utilizing the jurisdiction afforded by § 211. And § 210(b) deals with a specified type of legal wrong. As so read, the two sections furnishing the basis of the involvement of the courts and the right to judicial relief on the part of the affected private parties are consistent and comprehensive. They thus should be construed in accordance with their terms; and, again, we should not be quick to assume accidental or careless language on the part of the Congress where considerate purpose may be seen in the words employed."

537 F.2d at 1135–36.

Zenith and Musial contend that *Griffin* has overruled by implication the earlier case of *Arnson v. General Motors*, 377 F.Supp. 209 (N.D.Ohio 1974). In *Arnson*, the court held that the purchaser of an automobile could not bring an action against the manufacturer for overcharge on the sale of an automobile. In concluding the action could only be brought by the seller, the court stated:

"Elementary principles of statutory construction require this Court to proceed on the assumption that the legislative purpose is expressed by the ordinary mean-

ing of the words used. Obvious from the language of § 210(b) is that the thrust of the claim for damages involving the sale of goods in an overcharge *made by a seller to a plaintiff. The language clearly indicates that Congress intended to restrict the purchaser to an action against the immediate seller and did not allow for the recovery of damages from an overcharge instituted by any previous seller."* (Emphasis supplied by this Court). 377 F.Supp. at 211.

The court in *Arnson* then proceeded to review the legislative history of the Act and determined nothing in that history showed that Congress ever contemplated consumer suits against manufacturers. "Therefore, in view of the foregoing, the more practical and workable interpretation of § 210 is to limit standing in damage actions to purchasers of goods who have been overcharged by their immediate sellers." *Id.* at 212.[1]

In the recent case of *McCulloch Gas Processing v. Canadian Hydrogas*, 577 F.2d 712 (T.E.C.A.1978), the court narrowed the breadth of *Griffin* to those cases against the government which involve an unconstitutional taking under the Fifth Amendment. The issue arose in the context of the government's assertion that sovereign immunity was not waived by § 210, in a suit by a propane supplier alleging he was damaged by an FEA order that required him to keep supplying propane, despite the buyer's past financial delinquency and bad credit. In agreeing with the government's position, the court stated:

"The jurisdictional issue in *Griffin* arose and was resolved by this court in the context of an alleged taking of private property without just compensation. The constraints of that Fifth Amendment provision on occasion require courts to construe statutes in order to reconcile them with the constitutional requirement of just compensation, but such constructions are often of limited applicability, and they are unreliable authority for

plaintiffs raising other types of claims." 577 F.2d at 716.

Nothing in that opinion supports the intervenors' contention that § 210(a) extends standing to any injured party. The Court in *McCulloch* expressly rejected the "invitation to extend *Griffin* beyond the limits of the taking clause of the Fifth Amendment." 577 F.2d at 718.

Nor does anything in the legislative history of this statute support a more expansive view of § 210. There is no indication that suits were contemplated by anyone other than by the immediate buyer against the immediate seller. *See generally* the legislative history in U.S.Code Cong. & Admin. News, 92nd Congress, 1st Session 1971 at pp. 2283–2312.

■ It is a basic tenet of statutory interpretation that "[t]he starting point [for] every case involving construction of a statute is the language itself." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 196, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1975), citing *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 730, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). In light of the express statutory language of § 210(b), the relevant case law and the lack of legislative history to the contrary, this Court is bound to interpret that statute as it logically reads on its face. Such a view is consistent with the Supreme Court's recent holding in *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), and in *Ernst & Ernst, supra.*

As the Court stated in *Ernst & Ernst:* "When a statute speaks so specifically * * * and when its history reflects no more expansive intent, we are quite unwilling to extend the scope of the statute . . . ." *Id.* 425 U.S. at 214, 96 S.Ct. at 1391.

II.

ADEQUATE REPRESENTATION

■ This Court also finds that Florida Power & Light is an adequate representa-

---

[1]. The *Arnson* court also found class certification was improper under the Economic Stabilization Act. Clearly, this is a reason in and of itself for this Court to deny permissive intervention under 24(b). *See* 377 F.Supp. at 214.

tive of Zenith and Musial's interest in this case, and this is also sufficient ground to deny the motion for intervention under Rule 24(a). The record is clear that Florida Power & Light has an interest which is virtually identical with that of the intervenors. There is no evidence of collusion between plaintiff and defendant or an adverse interest between the intervenors and Florida Power & Light. In fact, the lawsuit may be viewed as one on behalf of the class of consumers, which as discussed previously, may not have standing under the Economic Stabilization Act.[2]

■ The intervenors' reliance on *Florida Power Corp. v. Granland,* 78 F.R.D. 441 (M.D.Fla.1978), is misplaced. In that case, the State of Florida was allowed to intervene in its role as *parens patriae* under 15 U.S.C. § 15(c). In addition, the State alleged collusion between the parties. No such allegation is made, nor could be substantiated here. Therefore, the rule in the Fifth Circuit is clear:

"Representation is adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor and if the representative does not fail in the fulfillment of his duty." *Martin v. Kalvar Corporation,* 411 F.2d 552, 553 (5th Cir. 1969).

*See also* 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1833 (1972). Although this Court foresees that there may be other instances in which representation may be inadequate other than those expressly noted in *Martin,* none of those considerations are before this Court in the present case.

Finally, it has been argued that the present action by the intervenors is proper before the Florida Public Service Commission and not before this Court. The leading case on this matter is *City of Miami v. Public Service Commission,* 208 So.2d 249 (Fla.1968). The Supreme Court of Florida in rejecting the City of Miami's argument that the Public Service Commission had erred in not ordering a refund of excess profits by two utilities stated: "An examination of pertinent statutes leads us to conclude that the Commission would have no authority to make retroactive ratemaking orders." *Id.* at 259.

In the recent case of *Richter v. Florida Power Corporation,* 366 So.2d 798 (Fla.App. 1978), the Second D.C.A. found that under certain circumstances, the Public Service Commission could alter its already set rates in extraordinary circumstances. That case involved a claim by consumers for damages against a utility for overcharging. In light of this decision, the Court finds no real factual distinction sufficient to take this case outside the realm of the broad and exclusive powers of the Public Service Commission.