**Minda SATTERWHITE, on behalf of herself and others similarly situated**

v.

**CITY OF GREENVILLE, TEXAS.**

No. CA 3–74–767–C.

United States District Court,
N. D. Texas,
Dallas Division.

June 18, 1975.

Larry R. Daves, Tyler, Tex., for plaintiff.

John Andrew Martin, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, Tex., for defendant.

## OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

■ This case presents the perplexing issue of whether a municipal employer who refuses to hire a female applicant as its airport manager to avoid violating a provision of its city charter relating to conflict of interests has committed sexual discrimination proscribed by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. In the context of the facts of this case, this issue must be answered in the negative.

### I. Facts

In October 1972, Minda Satterwhite, plaintiff herein, applied to the City of Greenville, Texas, defendant herein, for hire as the defendant's municipal airport manager. Both prior and subsequent to this application, the plaintiff's husband was a prime user [1] of this airport facility. During the plaintiff's interview, the defendant's Community Developments Manager confronted Ms. Satterwhite with the potential conflict of interest posed by a wife supervising the operation of a municipal facility of which her husband was both a prime user and tenant. The day following this interview, the Community Developments Manager informed Ms. Satterwhite that her application had been rejected because of her conflict of interest [2] and a male applicant had been retained in the airport manager position.

Contrary to the plaintiff's allegations, evidence adduced during the trial of this cause established this male-hiree to be at least as well qualified for the contested position as was Ms. Satterwhite.

On October 30, 1972, the plaintiff filed a charge of discrimination against

---

1. Mr. John Satterwhite was the owner of a flight training school and aircraft charter and rental service, which had its operations based at the Greenville Municipal Airport.

2. Sec. 134 Personal interest.

No member of the council or any officer or employee of the city shall have a financial interest direct or indirect or by reason of ownership of stock in any corporation, in any contract with the city, or be financially interested directly or indirectly in the sale to the city of any land, materials, supplies, or services except on behalf of the city as an officer or employee; provided, however, that the provisions of this section shall only be applicable when the stock owned by the officer or employee exceeds one per cent (1%) of the total capital stock of the corporation. Any wilful violation of this section shall constitute malfeasance in office and any officer or employee guilty thereof shall thereby forfeit the office or position. Any violation of this section with the knowledge express or implied of the person or corporation contracting with the governing body of the city shall render the contract voidable by the city manager or council.

Greenville, Tex., Code § 134 (19___).

the defendant with the Equal Employment Opportunity Commission (E.E.O.C.). The E.E.O.C. entered a determination concluding that there was not reasonable cause to believe that Title VII had been violated in the manner alleged by the plaintiff. Ms. Satterwhite was issued a Notice of Right to Sue, whereupon she instituted the instant lawsuit alleging sex discrimination. The plaintiff sought to prosecute this action on behalf of both herself individually and a class of present and prospective female employees of the City of Greenville. Fed.R.Civ.P. 23(b)(2).

## II. *The Individual Claim*

The Supreme Court clarified the proper order and allocation of proof governing the disposition of a Title VII action challenging employment discrimination in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■■ According to *McDonnell Douglas*, it is incumbent upon a Title VII complainant to carry the initial burden of establishing a prima facie case of discrimination. The Supreme Court prescribed four elements which are necessary to present a prima facie case. The plaintiff must show (I) that she belongs to a minority; (II) that she applied and was qualified for the job of airport manager for which the defendant was seeking applicants; (III) that, despite her qualifications, she was rejected, and (IV) that, after her rejection, the position remained open and the defendant-employer continued to seek applicants from persons of the plaintiff's qualifications.

■ When confronted with such a prima facie case of employment discrimination, the burden then shifts to the employer to establish some legitimate non-discriminatory reason for the refusal to hire. Such a reasonable basis for rejection suffices to rebut the prima facie case.

■ When her prima facie case is rebutted, the plaintiff must be accorded an opportunity to demonstrate by competent evidence that the presumptively valid reasons for her rejection were in fact a "pretext" or a "coverup" for a racially discriminatory decision.

■ Applying the *McDonnell Douglas* standard to the facts of the instant case, the court has a grave reservation as to whether Ms. Satterwhite has even presented a prima facie case. A prima facie case requires that after the plaintiff's rejection, the position *continue* to remain open and that the defendant *continue* to review applicants of the plaintiff's qualifications. Here, one day after Ms. Satterwhite's interview, her application was rejected and a qualified male applicant, whose interview preceded the plaintiff's, was hired. While the court appreciates that these prima facie elements are not inflexible requirements to be applied in every case regardless of its facts,[3] they nonetheless provide persuasive guidelines for ascertaining whether a Title VII complainant has satisfied his initial burden of proof.

Even if Ms. Satterwhite had presented a prima facie case, she has failed to prove that the defendant's reason for refusing to hire her was a "pretext" or "coverup" for an unlawful employment decision. The defendant contended that Ms. Satterwhite's application was rejected because her employment would have been counter to the City's codified policy against hiring personnel whose personal interests may conflict with their duties on behalf of the City. Towards showing this reason to be a "pretext" the plaintiff proffered statistical evidence in the form of the defendant's employment rolls. This exhibit was claimed to establish a general policy on behalf of the City of hiring female employees primarily in clerical or lower-echelon administrative positions. This statistical showing is unpersuasive when measured against the City's compelling reason for

3. *See* 411 U.S. at 802, N. 13, 93 S.Ct. 1817.

not hiring the plaintiff. The plaintiff could have better served her case by presenting evidence, if any existed, of male employees who were hired by the defendant despite their having "conflicts of interest" similar to Ms. Satterwhite's.

Ms. Satterwhite's employment application presented a dilemma to the City. It could elect either to reject her application as conflicting with its city charter and expose itself to a potential charge of sex discrimination, or it could hire her and face the ramifications of violating its own published policy. It is the court's conclusion that the defendant acted upon Ms. Satterwhite's bid for employment in exactly the same manner it would have acted upon any other application, regardless of whether it be from a male or female. The defendant's rejection of the plaintiff's employment application was not discriminatorily motivated.

### III. *The Class Action*

In her complaint, the plaintiff sought to represent a class comprised of present and prospective female employees, who the plaintiff alleged to be victims of the defendant's (1) discriminatory hiring policy, (2) sexually segregated job classifications and departments, and (3) discriminatory compensation scheme.

At the pretrial of this case, it appeared the plaintiff's claim was of questionable merit since the main question had to do with whether or not employment of plaintiff as airport manager would create a conflict of interest. This court is fully aware of the Fifth Court's admonition in Huff v. N. D. Cass Company of Alabama, 485 F.2d 710 (5th Cir. 1973), that the standard for determining whether a plaintiff may maintain a class action is not whether that plaintiff will ultimately prevail on the individual claim. There remained the question as to whether or not the questions of law or fact were common to the class and whether or not plaintiff's claim was typical of the claims or defenses of the class, as well as whether or not plaintiff would fairly and adequately protect the interests of the class. In this case also was the question as to whether or not the City had acted or refused to act insofar as plaintiff' was concerned on grounds generally applicable to the class. While the class action rule has value, unrestricted use can produce abuses. The defendant City in this case could well have been exposed to needless substantial expense.

The court has refused to permit this case to proceed as a class action mainly upon the ground that plaintiff has failed to establish a "nexus" because the conflict of interest issue unique to this case vitiates both the commonality of law and fact questions and the typicality of the claims and defenses. Fed. R.Civ.P. 23(a)(2) and 23(a)(3). Wells v. Ramsay, Scarlett and Company, Inc., et al, 506 F.2d 436 (5th Cir. 1975).

What the Supreme Court of the United States said in Blue Chip Stamps, et al, v. Manor Drug Stores, —— U.S. ——, 95 S.Ct. 1917, 44 L.Ed.2d 539 on June 9, 1975, in regard to "strike" or nuisance actions, abuse of liberal discovery provisions of the federal rules, "representing an *in terrorem* increment of the settlement value" is particularly pertinent in this case as well as in many actions where the plaintiff seeks to represent a class.

Defendant's attorney is requested to prepare and submit appropriate order.