PER CURIAM.
Plaintiff-appellee, McCulloch Gas Processing Corporation, brought this action against Hidrogas[1] and, more significantly for purposes of this appeal, William C. Arntz, Regional Administrator of the Federal Energy Administration, Region IX, and the United States. McCulloch claims that it suffered a legal wrong as a result of certain FEA [2] orders requiring it to continue supplying Hidrogas with propane despite *714 that purchaser’s poor credit posture and history of financial delinquency. McCulloch seeks to recover $897,184.65, plus interest, for propane delivered to Hidrogas in 1974 and 1975. The FEA orders are characterized by plaintiff as having been issued in a manner that denied McCulloch due process of law. Although the parties to the instant appeal[3] disagree as to the proper portrayal of the facts of this dispute, the question presented to this court for decision does not require us to resolve this issue.
The federal defendants moved for summary judgment in the district court, where they argued, inter alia, that plaintiff’s suit for damages against the United States was barred by the doctrine of sovereign immunity. The district court denied the government’s motion, but it certified to this court, pursuant to 28 U.S.C. section 1292(b), the following question:
Whether Griffin v. United States, 537 F.2d 1130 (TECA 1976), cert. denied, [429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 286] holds that § 210 of the Economic Stabilization Act, as incorporated by reference in the Emergency Petroleum Allocation Act, provides a right of damages available in suits against the federal government for damages on a basis other than that of an alleged unconstitutional taking of property for a public purpose without just compensation in violation of the Fifth Amendment and whether damages are available against the federal government under that Act in such suits.
We find that Griffin does not control the outcome of this appeal and that the United States has not exposed itself to damage claims like those brought by McCulloch.
Plaintiffs in Griffin sought damages against the United States for an alleged taking of their property for a public purpose without just compensation. Specifically, plaintiffs complained of the operation of the two-tier pricing system on domestic crude oil, by virtue of which a ceiling price of $5.25 per barrel was imposed on “old” oil while “new” and “released” oil could be sold without regard to the ceiling price.[4] Before reaching the merits of plaintiffs’ claims, the court addressed certain preliminary jurisdictional questions. The government in Griffin, as it does here, contended that section 210[5] could not provide the foundation for an action against the government, that its sole function was the creation of a private cause of action, by which one private party could sue another private party for *715 the latter’s violation of the Act, or regulations and orders issued thereunder. Insofar as a private party sought relief against the government, it was argued that the only available remedy was the declaratory and injunctive relief provided in section 211[6] of the Economic Stabilization Act.
Had the government’s position prevailed in Griffin the victory would have been short-lived. It is unlikely that the defendant would thereby have avoided the immediate threat of a substantial claim for damages,[7] and the constitutionality of the Act would have been put in serious question, for the Fifth Amendment prohibits the result urged by the government in Griffin.
Absent the provision in section 211(a) investing the district courts with exclusive jurisdiction over cases arising under the EPAA, plaintiffs in Griffin could have brought their action under the Tucker Act,[8] for that Act would ordinarily provide the jurisdictional basis for a suit alleging an unlawful taking. The government argued, however, that, having withdrawn the Tucker Act remedy, the EPAA left plaintiffs with no damage remedy at all, only the declaratory and injunctive relief provided in section 211.
Plaintiffs in Griffin responded that section 211 operated to waive the jurisdictional amount limitation contained in the Tucker Act but that it did not circumscribe the relief available to them, for their right to sue was contained in section 210, which is not limited to claims for injunctive and *716 declaratory relief, but provides for damage claims as well. Griffin found plaintiffs to be “nearer the mark” on the jurisdictional issue, and held that their right to sue was indeed located in section 210. While plaintiffs herein point to language in Griffin that might suggest a more expansive holding, however, this court did not adopt the view that section 210 could be relied upon to support a damage claim against the United States regardless of the basis for such a claim. The court’s language indicates the narrowness of the Griffin holding:
We believe that if or to the extent plaintiffs suffered legal wrong because of any taking of their property as a result of the two-tier oil pricing system, they would have the right to utilize the jurisdiction afforded in the district court by § 211 by bringing the type of action contemplated by § 210(a) for damages, there being no limitations in § 211 to the contrary.
Griffin, supra, 537 F.2d at 1136 (emphasis added).
In reaching the conclusion that plaintiffs alleging a taking could bring an action for damages under section 210, Griffin made pointed referenpe to the Regional Rail Reorganization Act Cases, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), in which the Supreme Court confronted a similar issue. The Court was there concerned with the finding of a three-judge district court that the Rail Act[9] was unconstitutional because it could not be construed to incorporate the Tucker Act and therefore provided no remedy for a Fifth Amendment taking. The Court observed that the district court had viewed the problem from the wrong perspective. The proper inquiry was not whether the Rail Act had incorporated the Tucker Act but rather whether the latter Act had been affirmatively withdrawn. The Court refused to find an implied withdrawal of Tucker Act jurisdiction in the Rail Act, since a construction upholding constitutionality is favored, and withdrawal of Tucker Act jurisdiction, leaving plaintiffs without a remedy for an alleged taking, would have left the constitutionality of the Rail Act in “grave” doubt. Regional Rail Reorganization Act Cases, supra, 419 U.S. at 134, 95 S.Ct. 335.
The jurisdictional issue in Griffin arose and was resolved by this court in the context of an alleged taking of private property without just compensation. The constraints of that Fifth Amendment provision on occasion require courts to construe statutes in order to reconcile them with the constitutional requirement of just compensation, but such constructions are often of limited applicability, and they are unreliable authority for plaintiffs raising other types of claims. The observation of the Supreme Court in United States v. Testan, 424 U.S. 392, 401, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976), rejecting plaintiffs’ attempt to find an implied waiver of sovereign immunity in the Classification Act,[10] is applicable, in somewhat paraphrased form, to the instant case:
We perceive nothing in [Griffin ], cited . with other cases centering in the Just Compensation Clause of the Fifth Amendment (“nor shall private property be taken for public use, without just compensation”), that lends support to the respondents. These Fifth Amendment cases are tied to the language, purpose, and self-executing aspects of that constitutional provision, [citation omitted], and are not authority to the effect that [§ 210] eliminates from consideration the sovereign immunity of the United States.
We thus answer the first part of the question certified in the negative. Griffin does not hold that section 210 provides a right of damages in suits against the government on a basis other than that of an alleged unconstitutional taking of property for a public purpose without just compensation. Moreover, with regard to the second *717 part of the question before this court, we hold that, Griffin aside, damages are not available against the government in such suits.
Plaintiff argues that its right to procedural due process is as basic and as demanding of protection as its right to be compensated for a taking of its property for a public use. With that proposition this court has no dispute. It does not follow, however, as plaintiff would have it, that one who claims a due process violation may seek damages from the United States, for a waiver of sovereign immunity must first be established. Such a waiver is implicit in the taking clause of the Fifth Amendment, but no such waiver is contained in the due process clause. See, e. g., Duarte v. United States, 532 F.2d 850 (2d Cir. 1976).
The government urges that a waiver of sovereign immunity must be explicit and unambiguous, and that the absence in section 210 of any reference to the United States requires us to find that the sovereign’s immunity remains intact. We find the test to be somewhat more generous than the government would have it, but we agree that section 210 provides plaintiff with no cause of action for damages against the United States. The relevant test has recently been described by the Supreme Court in United States v. Testan, supra, 424 U.S. at 401-02, 96 S.Ct. 948, 955, 47 L.Ed.2d 114:
Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim — whether it be the Constitution, a statute, or a regulation— does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis “in itself can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.” [citation omitted],
We do not find that section 210 can be fairly so interpreted. While there is scant legislative history relevant to our inquiry, what history there is indicates the intent of Congress to provide in section 210 a remedy for private parties injured by violations of the statute, and orders and regulations issued thereunder, by other private parties.[11] Nor can we lightly assume that Congress would have provided a cause of action for damages against the government in the circumstances of this case. To expose the FEA to damage actions based on its regulations and orders would constitute a highly unusual choice by Congress, and we will not impute such a decision to the legislature when plaintiff can offer no evidence, apart from an ambiguous statute, in support of its position.[12]
Plaintiff invokes the benefits of judicial review of agency action in support of its contention that Congress did in fact provide for damage actions against the government in section 210. There is no doubt, however, that such review exists, and plaintiff was free to demand it when it was subjected to the orders it now claims deprived it of due process and caused it financial loss. Section 211 provides the means by which a party may, upon a proper showing, invoke the power of this court or a district court to *718 enjoin the enforcement of a regulation or order. This court and others have recognized the distinction between actions brought, for legal or equitable relief, against private parties pursuant to section 210, and actions for equitable relief against the government pursuant to section 211.[13] Air Products and Chemicals, Inc. v. United Gas Pipe Line Co., 503 F.2d 1060, 1063 (Em.App.1974); McGuire Shaft & Tunnel Corp. v. Local Union No. 1791, UMW, 475 F.2d 1209, 1213-14 (Em.App.), cert. denied, 412 U.S. 958, 93 S.Ct. 3008, 37 L.Ed.2d 1009 (1973); Brennan Petroleum Products Co., Inc. v. Pasco Petroleum Co., Inc., 373 F.Supp. 1312, 1315 (D.Ariz.1974).
Griffin departed from this view of the statutory scheme, but it did so in order to reconcile the Act with the demands of the Fifth Amendment. No similar constraint appears in this case, and we reject plaintiff’s invitation to extend Griffin beyond the limits of the taking clause of the Fifth Amendment.
Reversed and remanded to the district court for action consistent with this opinion.
IT IS SO ORDERED.

. For purposes of this appeal, the separate identities of defendants Canadian Hidrogas Resources, Ltd.; Hidrogas, Ltd.; Hidrogas, Inc.; and Evan W. G. Bodrug are of no significance, and they will be referred to collectively as Hi-drogas.

. As of October 1, 1977, pursuant to the Department of Energy Organization Act (P.L. 95-91), and Executive Order 12009 (42 Fed.Reg. 46267, Sept. 15, 1977), the FEA became part of the newly-established Department of Energy. Since the orders at issue in this appeal were issued by the FEA, this opinion will refer to the FEA, although the proper reference is now the DOE.

. Hidrogas is not a party to this appeal.

. For a more complete picture of the two-tier crude oil pricing system, see Griffin and cases cited therein, 537 F.2d at 1131 n. 1.

. § 210. Suits for damages or other relief
(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.
(b) In any action brought under subsection (a) against any person renting property or selling goods or services who is found to have overcharged the plaintiff, the court may, in its discretion, award the plaintiff reasonable attorney’s fees and costs, plus whichever of the following sums is greater:
(1) an amount not more than three times the amount of the overcharge upon which the action is based, or
(2) not less than $100 or more than $1,000; except that in any case where the defendant establishes that the overcharge was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to the avoidance of such error the liability of the defendant shall be limited to the amount of the overcharge: Provided, That where the overcharge is not willful within the meaning of section 208(a) of this title, no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller or renter a bona fide claim for refund of the overcharge and has not received repayment of such overcharge within ninety days from the date of the presentation of such claim.
(c) For the purposes of this section, the term “overcharge” means the amount by which the consideration for the rental of property or the sale of goods or services exceeds the applicable ceiling under regulations or orders issued under this title.

. § 211. Judicial Review
(a) The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders, issued thereunder, notwithstanding the amount in controversy; except that nothing in this subsection or in subsection (h) of this section affects the power of any court of competent jurisdiction to consider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by any agency under this title) raised in any proceeding before such court. If in any such proceeding an issue by way of defense is raised based on the constitutionality of this title or the validity of-agency action under this title, the case shall be subject to removal by either party to a district court of the United States in accordance with the applicable provisions of chapter 89 of title 28, United States Code.
(b) (1) There is hereby created a court of the United States to be known as the Temporary Emergency Court of Appeals Except as provided in subsection (d)(2) of this section, the court shall not have power to issue any interlocutory decree staying or restraining in whole or in part any provision of this title, or the effectiveness of any regulation or order issued thereunder. In all other respects, the court shall have the powers of a circuit court of appeals with respect to the jurisdiction conferred on it by this title.
(d)(2) A district court of the United States or the Temporary Emergency Court of Appeals may enjoin temporarily or permanently the application of a particular regulation or order issued under this title to a person who is a party to litigation before it.
(e)(1) Except as provided in subsection (d) of this section, no interlocutory or permanent injunction restraining the enforcement, operation, or execution of this title, or any regulation or order issued thereunder, shall be granted by any district court of the United States or judge thereof. Any such court shall have jurisdiction to declare (A) that a regulation of an agency exercising authority under this title is in excess of the agency’s authority, is arbitrary or capricious, or is otherwise unlawful under the criteria set forth in section 706(2) of title 5, United States Code, or (B) that an order of such agency is invalid upon a determination that the order is in excess of the agency’s authority, or is based upon findings which are not supported by substantial evidence. .
Sections 210 and 211 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, are incorporated by reference into the Emergency Petroleum Allocation Act of 1973, (EPAA), 15 U.S.C. § 754.

. That threat was avoided anyway, however, since the claim was rejected on the merits by Griffin.

. 28 U.S.C. § 1491 provides:
The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliq-uidated damages in cases not sounding in tort. .
The district courts enjoy concurrent jurisdiction in cases involving no more than $10,000. 28 U.S.C. § 1346.

. Regional Rail Reorganization Act of 1973, 45 U.S.C. § 701 et seq.

. 5 U.S.C. § 5101 et seq.

. “Section 210 provides a traditional method by which violators of regulations may be discovered and other would-be violators may be deterred. This can be accomplished by authorizing a person suffering a legal wrong to bring a treble damage action against the violator.
“This action is intended to be brought by private persons against other private persons. The Government will not bring such action nor be the subject of one. . . . ” S.Rep.No. 92-507, 92d Cong., 1st Sess. (1971), U.S.Code Cong. & Admin.News, pp. 2283, 2291.

. It is well established that, in the absence of any statutory foundation, improper regulatory action will not provide the basis for a damage action against the government unless the regulation amounts to a taking. See Mosca v. United States, 417 F.2d 1382, 1386, 189 Ct.Cl. 283 (1969); Eastport Steamship Corp. v. United States, 372 F.2d 1002, 1009, 178 Ct.Cl. 599 (1967) [both cases cited with approval in United States v. Testan, supra, 424 U.S. at 400, 96 S.Ct. 948].

. Judge Christensen states in his concurring opinion that we have altered the meaning of Griffin by holding that section 210 did not in fact provide the cause of action against the United States in that case. Such is not our intent. We agree that section 210, when read in conjunction with the just compensation clause of the Fifth Amendment, permits a person suffering legal wrong to bring an action for damages against the government. We do not agree, however, that section 210 otherwise provides the basis for actions of any type against the United States. Unless a Fifth Amendment taking is alleged, in which case damages may be sought under section 210, we believe that section 211 provides the proper avenue for relief against the United States.