Margaret M. BLIZARD, Plaintiff,

v.

Jonathan E. FIELDING, M. D., as he is Commissioner of Public Health, Commonwealth of Massachusetts, Defendant.

Civ. A. No. 75–2031–C.

United States District Court,. D. Massachusetts.

July 11, 1978.

Jeanne Baker, Rosenberg, Baker & Fine, Cambridge, Mass., for plaintiff.

Terry Jean Seligmann, Asst. Atty. Gen., Boston, Mass., for defendant.

## OPINION

CAFFREY, Chief Judge.

After a non-jury trial, this Court ruled that plaintiff Margaret M. Blizard had failed to establish her claim of sex discrimination or retaliatory discrimination on the part of her employer, defendant Jonathan Fielding, Massachusetts Commissioner of Public Health. On appeal, that judgment was vacated and the case remanded to this Court "for further proceedings not inconsistent with this opinion."[1] Plaintiff has now moved (1) for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure; and (2) for this Court to disqualify itself under 28 U.S.C.A. § 455(a), as amended in 1974, Pub.L. No. 93–512, 88 Stat. 1609.

Of necessity, the initial matter before me is the motion to recuse. Plaintiff's motion is predicated essentially on the argument, in her words, that "various objective aspects of the record of what has already occurred in this case call into question the impartiality of the trial judge and indicate a possible personal bias and prejudgment of plaintiff's claims, which would prevent the original trial judge from presiding on remand proceedings with a free and open mind."

The pertinent portion of 28 U.S.C.A. § 455(a), under which plaintiff seeks recusal, reads as follows: "Any . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In construing this reasonableness standard, I turn first to the statute's legislative history. The rationale underlying subsection (a) of the amended § 455 was to "promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality he should disqualify himself." H.Rep. No. 1453, 93d Cong., 2d Sess., 1974 U.S. Code Cong. & Admin. News at 6351, 6355. The statute was designed to erode the so-called "duty to sit" concept. *Id.* Under that "duty to sit" doctrine, a judge faced with a close question regarding recusal was to resolve the question in favor of sitting. *See, e. g., Edwards v. United States,* 334 F.2d 360 (5th Cir. 1964).

The framers of the amended statute, after enunciating its objectives, cautioned against its misuse:

[T]he new test should not be used by judges to avoid sitting on difficult or controversial cases.

At the same time, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a

1. *Blizard v. Fielding,* 572 F.2d 13 (1st Cir. 1978).

judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice. *Id.* (emphasis in original)

■ As the legislative history and the language of the statute demonstrates, the amended statute changed the standard for recusal from a subjective to an objective one. *See, e. g., Fredonia Broadcasting Corp., Inc. v. RCA Corp.,* 569 F.2d 251 (5th Cir. 1978); *SCA Services, Inc. v. Morgan,* 557 F.2d 110 (7th Cir. 1977) (per curiam). The Court of Appeals for this Circuit has enunciated the proper test as

> whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C.A. § 455, but rather in the mind of the reasonable man.

*United States v. Cowden,* 545 F.2d 257, 265 (1st Cir. 1976), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). *Accord, United States v. Cepeda Penes,* 577 F.2d 754, at 757 (1st Cir. 1978).

■ In applying that standard I am mindful that ordinarily a judge should not disqualify himself under § 455(a) "solely on the basis of judicial rulings . . . made in the course of a trial . . .." 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3549 at 195 (1977 Supp.). If a judge who rules against a party can successfully be labelled prejudiced for that reason, then the Court of Appeals would never be able to remand a case for further action by the judge who initially decided it. It should be self-evident that adverse rulings in themselves do not create judicial partiality. *See, e. g., United States v. Schwartz,* 535 F.2d 160, 165 (2d Cir. 1976); *Honneus v. United States,* 425 F.Supp. 164, 166 (D.Mass.1977). Otherwise, "there would be almost no limit to disqualification motions and the way would be opened to a return to 'judge shopping', a practice which

has been for the most part universally condemned. Certainly every ruling on an arguable point during a proceeding may give 'the appearance of' partiality, in the broadest sense of those terms, to one party or the other." *Lazofsky v. Sommerset Bus Co., Inc.,* 389 F.Supp. 1041 (E.D.N.Y.1975). The case law interpreting § 455(a) emphasizes, as does the statute's legislative history quoted above, that litigants are not entitled to judges of their own choice. *See, e. g., Mayberry v. Maroney,* 558 F.2d 1159 (3d Cir. 1977); *United States v. Haldeman,* 181 U.S.App.D.C. 254, 362–63 n.360, 559 F.2d 31, 139–40 n.360 (1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250.

In the matter before me, plaintiff takes umbrage at certain words in my initial opinion. Specifically, she objects to: (1) the use of the word "obsessed" in the finding that she was "a person who is so obsessed with the notion that she has a right to become Deputy Commissioner of the Department that she is unable to accept or perform any other task"; (2) the word "vegetating" in the finding that she was "vegetating in her office at an expense to the taxpayers of some $25,000 a year"; (3) alleged reliance on extrajudicial sources in the use of the $25,000 figure quoted above; and (4) my characterization of her suit as "marathon litigation."

■ I recognize, of course, that "[f]indings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice." *Peacock Records, Inc. v. Checker Records, Inc.,* 430 F.2d 85, 89 (7th Cir. 1970); *cf. United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Moreover, I am mindful that the Court of Appeals for this Circuit has recently admonished that a judge's participation in prior proceedings in a given case may on occasion form the basis for a finding of bias. *United States v. Cepeda Penes, supra* at 758. That occasion occurs, however, when a plaintiff is "able to point to some behavior on the part of the judge suggesting that there is, in fact, some fric-

tion between the judge and the complaining party—not a mere disagreement over the state of the law on any given point." *Id.* Plaintiff nowhere suggests any such friction. Nor could she. I have never had and I do not now have extrajudicial knowledge of the plaintiff. My rulings in an earlier phase of this case might have provided plaintiff with a basis for a claim of legal error, but not with grounds for my recusal. *E. g., Botts v. United States,* 413 F.2d 41 (9th Cir. 1969); *Hawaii-Pacific Venture Capital Corp. v. Rothbard,* 437 F.Supp. 230 (D.Hawaii 1977).

The plaintiff here rests her claim of prejudice basically on a few modifying words used in the earlier opinion. A judge's choice of words is insufficient to support disqualification. *Cf. United States v. Cardall & Golden Rule Associates,* 550 F.2d 604 (10th Cir. 1976). The isolated words of which she complains must be examined on the basis of the entire record, not taken out of context. For example, plaintiff's objection to the use of the term "vegetating" is ill-founded in light of the supporting evidence before me. I have in mind the following trial testimony:

Q. (by Mrs. Seligman): Is it fair to say that in 1974 and 1975, after completing that Manual of Laws project, which you handed in, that you just sat and vegetated in your office?

A. (by Mrs. Blizard): Yes. I was allowed—I sat waiting for communication, reported every day at eight and sat through until five and waited for communication. I went in every day to the Commissioner.

This colloquy establishes that the word "vegetating" originated not from any prejudice but from the plaintiff's own testimony, which the Court accepted as factual. Since the term objected to derives from plaintiff's own testimony, it strains credulity for plaintiff to argue that its use in the earlier opinion would lead a reasonable man to doubt my impartiality.

Plaintiff's objection to the word "obsessed" similarly fails. That adjective derives from a finding based on plaintiff's own testimony. Specifically, I based that finding on the fact that Mrs. Blizard in the course of the trial had read into evidence a memorandum she sent Dr. Bicknell, dated November 13, 1972, which states in pertinent part:

Most of my time, both in and out of the office, evenings and weekends, has been spent in matters relating to processing my personal grievances. . . .

Following her reading of that document and its admission into evidence, the following dialogue ensued:

The Court: Let me ask a question: If I heard what you read, you were telling Mr. Bicknell, or Dr. Bicknell, that you spent a substantial portion of your time in the office, on the job, time working on a personal appeal, is that what I heard.

Mrs. Blizard: Yes, sir.

Turning next to the reference to plaintiff's $25,000 annual salary in the earlier opinion, plaintiff argues that the use of this figure shows reliance on extrajudicial sources. The fact is that this figure came from plaintiff's own answer to an interrogatory, which although not offered in evidence at the trial, certainly is not an "extrajudicial" source for purposes of Section 455(a). *Cf. United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Moreover, her salary was not the basis for any ruling in this or the earlier opinion.

Plaintiff's objection to the characterizing of her suit as "marathon" does not rise to a level requiring disqualification. In context, the word "marathon" appears in the earlier opinion as follows:

Consequently I rule that plaintiff has failed to establish by credible evidence either that she was discriminated against by the present or any former commissioners because of her age or her sex and she has likewise failed to show that any retaliatory action has been taken against her by any commissioner present or former because of her marathon litigation.

The word "marathon" is defined in Webster's New Collegiate Dictionary (1977 ed.),

*inter alia*, as meaning "something characterized by great length or concentrated effort." In light of the concentrated effort that Mrs. Blizard admitted at trial she gave this matter between the time she filed charges with the Massachusetts Commission Against Discrimination (MCAD) on August 18, 1972 and the time of trial of this case in 1977, the use of the modifier "marathon" was appropriate and not intended to be pejorative. In sum, a careful analysis of the memorandum accompanying plaintiff's motion for recusal establishes that that motion is not founded upon facts which would cause a reasonable person to doubt my impartiality.

█ Another consideration in my retention of this case is judicial economy. In remanding, the Court of Appeals did not order a new trial and did not order a new judge to handle the case. Thus, this matter comes within that class of cases where "for a new judge to achieve familiarity would require wasteful delay or duplicated effort." *See O'Shea v. United States*, 491 F.2d 774 (1st Cir. 1974), and cases cited therein.

Plaintiff also argues that because an erroneous burden was placed on her of proving an age discrimination claim, my recusal is compelled under *Murray v. United States*, 300 F.2d 804 (1st Cir. 1962). In that case, however, the Court of Appeals expressly ordered a new trial. But the Court in *Murray* did not expressly order that a new judge should retry the case, even though the original trial judge had twice saddled the plaintiff therein with an erroneous burden of proof. The Court of Appeals merely suggested that "*[p]erhaps under the circumstances* fairness to both parties indicates a fresh view of the evidence by another judge." *Id.* at 807 (emphasis added).

█ This Court's sworn duty is not to disqualify itself unless there are proper and reasonable grounds for so doing. This is not such a case. "There is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *In Re Union Leader Corp.*, 292 F.2d 381 (1st Cir. 1961).

Accordingly, the motion for disqualification must be denied.

I turn next to plaintiff's motion for a new trial. Plaintiff alleges as grounds for this motion that "a full and fair reading of the opinion of the Court of Appeals requires a new trial." I disagree. The order of the Court of Appeals provides:

> The judgment of the District Court is vacated and the cause is remanded to that court for further proceedings not inconsistent with the opinion of the Court filed this day.

The issue before me is construction of that remand order. The Court of Appeals did not grant a new trial, nor does their order or opinion suggest reopening the record. I have no doubt whatsoever that if the Court of Appeals had intended a remand for a new trial, it knew how to so order, and it would have clearly so stated. *E. g., Franchi Construction Co. v. Combined Insurance Co. of America*, 580 F.2d 1, at 8 (1st Cir. 1978). *See also Ramsey v. United Mine Workers of America*, 481 F.2d 742, 753 (6th Cir.), *cert. denied*, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 473 (1973).

█ When a case is remanded for "further proceedings not inconsistent with this opinion," it is within the District Court's discretion to deny a motion for a new trial. *E. g., McGregor Boulevard Church of Christ v. Walling*, 428 F.2d 401 (5th Cir. 1970); *Lane v. Missouri-Kansas-Texas R.R. Co. of Texas*, 223 F.2d 159 (5th Cir. 1955). *See also Boston & Maine R.R. v. Coppellotti*, 167 F.2d 201, 204 (1st Cir. 1948). In view of the directions upon remand, the Court is of the opinion that the motion for a new trial should be denied.

█ I turn now to the matter before me on remand. When a plaintiff brings a Title VII action alleging employment discrimination on the basis of her sex, she bears the initial burden of presenting sufficient evidence to establish a *prima facie* case of discrimination. The burden then shifts to the defendant to rebut the *prima facie* case by showing a legitimate, non-discriminatory reason for his actions. If the defendant

makes a successful rebuttal, the burden shifts back to the plaintiff to show that the stated non-discriminatory reason given by defendant for his actions was only a pretext. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Sweeney v. Board of Trustees of Keene State College*, 569 F.2d 169, 177 (1st Cir. 1978).

Thus, the initial question before me is to establish whether plaintiff has made out a *prima facie* case. Four elements are necessary to establish that *prima facie* violation: (1) membership in a protected minority; (2) qualification for the position sought; (3) rejection; and (4) the desired position remaining open following rejection. *McDonnell-Douglas Corp. v. Green, supra*, 411 U.S. at 802, 93 S.Ct. 1817. In considering the elements of the *prima facie* case, I am mindful that the Court of Appeals for the First Circuit has expressly stated that those requirements "do not impress us as imposing a very arduous burden upon a plaintiff." *Sweeney v. Board of Trustees of Keene State College, supra* at 177.

From the record before me, there is no question but that plaintiff meets three of the four requirements. She is a member of a protected class under Title VII, and she was rejected for the Deputy Commissioner position. Further, the position remained open following her rejection. The remaining requirement of the *prima facie* case, plaintiff's qualification, is a more difficult issue to resolve. I have before me the Civil Service list showing only plaintiff as eligible for the Deputy Commissioner position. I also note that plaintiff has adequate academic and experiential credentials. Moreover, one witness, Edward Kuypers, a former state employee who had previously worked with plaintiff, testified that he considered her excellently qualified for the position she sought. Consequently, this Court is satisfied that the plaintiff possessed the minimum qualifications for the position she sought. Therefore, I rule that she has carried her burden of establishing the *prima facie* case.

I turn next to the question of whether the defendant has successfully rebutted plaintiff's *prima facie* case. On the record before me, I find that the defendant has articulated and proved legitimate, non-discriminatory reasons for rejecting plaintiff's appointment. Among the reasons Dr. Bicknell had for not promoting the plaintiff was that he believed a choice from a Civil Service list containing only one name was not a proper basis for selection for the second-highest position in the Department of Public Health. Bicknell's insistence on some choice, which a list of only one name obviously fails to provide, was in itself a legitimate, nondiscriminatory reason for rejecting Mrs. Blizard. *Cf. Satterwhite v. City of Greenville*, 395 F.Supp. 698, 701 (N.D.Tex.1975).

Bicknell also testified that he rejected plaintiff because her views on health care were not logically presented, were superficial, and did not coincide with his. Since the position sought by plaintiff was the second-highest position within a department of 4,300 employees and was at the policy-making level, it is self-evident that a close working relationship based on mutual respect and trust between the Commissioner and Deputy Commissioner would be necessary for effective functioning.

Furthermore, I rule that there is no credible evidence before me from which to infer that Dr. Bicknell rejected plaintiff for the Deputy Commissioner position because of sex-based bias. I recognize that in a case like this the Supreme Court has not said that a plaintiff must present direct evidence of discriminatory intent to make out a Title VII violation. *See, e. g., International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Indeed the Supreme Court has observed that purposeful discrimination may be proved by circumstantial evidence. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). However, in the case before me, the evidence is that the male incumbent in the position plaintiff sought was dismissed contemporaneous with her nonappointment.

There is no evidence that any male was ever interviewed for the position. Therefore there are no reasonable grounds for inferring that Dr. Bicknell ever intended to hire a male rather than a female as Deputy Commissioner. Consequently, I rule that the defendant has sustained his burden of showing that a legitimate, nondiscriminatory reason existed for his nonappointment of plaintiff to the job of Deputy Commissioner. Each of the stated reasons is supported by the evidence adduced at trial.

Moreover, plaintiff has not shown that the reasons given by Dr. Bicknell for her nonappointment were pretexts. The use of the term "pretext" in this context has been explained as requiring a showing by plaintiff that her sex was a "but for" cause of her non-promotion. *See McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 282 n.10, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). *See also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Plaintiff has not shown that had she been a man rather than a woman she would have been appointed Deputy Commissioner.

Therefore, on the non-promotion claim, I rule that the plaintiff has not established by a preponderance of the evidence that she has been a victim of sex discrimination. It must be kept in mind that Title VII "does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group." *Griggs v. Duke Power Co.*, 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

I turn next to plaintiff's second claim, the charge of retaliatory harassment, noting that her complaint alleges that partial resolution of this charge has been accomplished through MCAD. It is clear that Section 704(a) of Title VII, 42 U.S.C.A. § 2000e–3(a), prohibits an employer from retaliating against an employee because he or she has participated in civil rights proceedings. *See, e. g., McDonnell-Douglas Corp. v. Green, supra.* It is also clear that Congress did not intend "to grant sanctuary to employees to engage in political activity

for women's liberation on company time . . . . An employer remains entitled to loyalty and cooperativeness from employees. '[M]anagement prerogatives . . . are to be left undisturbed to the greatest extent possible. Internal affairs of employers . . . must not be interfered with except to the limited extent that correction is required in discrimination practices.' Additional views on H.R. 7152, U.S. Code Cong. & Admin. News, p. 2516 (88th Cong., 2d Sess., 1964)." *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 230 (1st Cir. 1976).

To prove her claim of harassment, plaintiff must show that: (1) she engaged in protected activity; (2) she was subsequently retaliated against; and (3) a causal relationship exists between the protected activity and the claimed harassment. *Hochstadt v. Worcester Foundation for Experimental Biology*, 425 F.Supp. 318, 324 (D.Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976).

Applying that standard to the facts before me requires initially a determination as to what extent plaintiff's conduct was protected by Title VII. To make this determination, the Court of Appeals for this Circuit has set forth a balancing test: "[C]ourts have in each case to balance the purpose of the Act to protect persons engaging reasonably in activities opposing sexual discrimination, against Congress' equally manifest desire not to tie the hands of employers in the . . . control of personnel." *Hochstadt v. Worcester Foundation for Experimental Biology, supra* at 231.

Applying that balancing test, I find and rule that Mrs. Blizard's actions at work went beyond the scope of protected opposition and thus were not immunized by the statute. It is well-recognized that employers have "a legitimate interest in seeing that . . . employees perform their work well." *Id.* at 233, *citing McDonnell-Douglas Corp. v. Green, supra*, 411 U.S. at 801, 93 S.Ct. 1817. Mrs. Blizard has argued that pursuit of her Title VII claims justified nonperformance of assigned duties. This argument fails. When during regular

working hours an employee is so immersed in pursuing her own interests that she cannot do her job effectively, then her employer can lawfully react to the nonperformance of her work responsibilities so long as that reaction is not a pretext to cover decisions based on that employee's sex. *Cf. Doe v. AFL–CIO, Department of Organization, Region 6,* 405 F.Supp. 389, 393 (N.D.Ga. 1975), *aff'd,* 537 F.2d 1141 (5th Cir. 1976). Defendant's reaction to plaintiff's nonperformance of assigned projects was to alter the nature of the work given to her. Under the circumstances, I find and rule that the change in assignments cannot properly be characterized as retaliation. Nor can the lack of a personal secretary [2] be considered harassment when adequate alternative services including a dictaphone were provided.

In addition to the changed nature of the work assignments and the temporary deprivation of a personal secretary, plaintiff alleges retaliation consisting of the change of location of her office. While this could theoretically be characterized as retaliation, I rule that no causal connection has been shown to exist between any protected civil rights activity on plaintiff's part and the decision to change the location of her office.

There is no credible evidence before me from which to conclude that any of the claimed acts of harassment occurred because of plaintiff's sex. Instead, there were legitimate nondiscriminatory reasons for each act of which plaintiff complains. I rule that the basic justification was Mrs. Blizard's nonperformance of assigned duties. I further rule that a legitimate reason for the changes in secretarial assistance and office space was the fiscal needs of the Department of Public Health. The record clearly shows that the actions of which plaintiff complains had nothing to do with her sex or any protected civil rights actions. *Cf. Green v. McDonnell-Douglas Corp.,* 390 F.Supp. 501 (E.D.Mo.1975). At all times pertinent to this suit, defendant's treatment of plaintiff was justified and reasonable under the circumstances.

Therefore, I rule that plaintiff has not sustained her burden of proving a violation of § 704(a) of Title VII.

Order accordingly.

---

2. The original decision to transfer plaintiff's secretary was made in May, 1972, prior to the time Mrs. Blizard was denied promotion.