787 F.2d 593
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
AHMAD AZIZ KHAN, MUHAMMAD YUSUF FARRAKHAN, Defendants-Appellants.
 85-1115, 85-1132
 United States Court of Appeals, Sixth Circuit.
 3/27/86
 
 AFFIRMED
 E.D.Mich.
 On Appeal from the United States District Court for the Eastern District of Michigan
 Before: KENNEDY and CONTIE, Circuit Judges; and GIBSON, District Judge.*
 KENNEDY, Circuit Judge.
 
 
 1
 Defendants appeal from their jury convictions for conspiracy to file false income tax claims (18 U.S.C. Sec. 286) and for filing false claims and aiding and abetting (18 U.S.C. Secs. 287 and 2). Defendant Farrakhan was convicted on the conspiracy charge and multiple counts of the substantive charges; Khan was convicted on the conspiracy charge and one count of the substantive charges.
 
 
 2
 Both defendants allege error in three instances: that the evidence presented was insufficient to convict the defendants of knowing participation in the conspiracy; that the court abused its discretion in denying defendants' challenge for cause of a juror; and that the court abused its discretion in admitting statements by the wife of defendant Farrakhan. Additionally, Khan alleges error in the court's instruction to the jury in one instance, allowing the jury to consider the actions and statements of all the alleged participants in determining whether defendant was a member of the conspiracy. Finding no error, this Court affirms the judgment of conviction.
 
 I.
 
 3
 The defendants first charge that the District Court erred in denying their motion for acquittal on the conspiracy charge after all proofs. The court relied on the proper standard in denying the motion. The court noted that although Fed. R. Crim. P. 29 states that the court shall grant such motion 'if the evidence is insufficient to sustain a conviction of such offense or offenses,' the law interpreting the rule clearly establishes that this standard is not the same as that which a jury must follow in reaching a verdict. The court cited Burks v. United States, 437 U.S. 1, 16 (1978) and United States v. Evans, 572 F.2d 455, 476 (5th Cir.), cert. denied, 439 U.S. 870 (1978) and held that the standard is whether a reasonable-minded jury could accept the relevant evidence, taken in a light most favorable to the government, as adequate and sufficient to support a conclusion of defendants' guilt beyond a reasonable doubt.
 
 
 4
 The court found, regarding Khan, and viewing the evidence most favorably to the government, that a jury could conclude beyond a reasonable doubt that Khan was a knowing and wilful member of the conspiracy. The elements required to prove a conspiracy are that: (1) the conspiracy described in the indictment was fully formed and was existing at or about the time alleged; (2) the defendant wilfully became a member of the conspiracy; and (3) one of the conspirators thereafter knowingly committed at least one overt act in furtherance of an object of the conspiracy. United States v. Thompson, 533 F.2d 1006, 1009 (6th Cir.), cert. denied, 429 U.S. 939 (1976). The indictment charged that the conspiracy began in or around January, 1981, and continued through at least June, 1982. Alleged co-conspirators included not only Farrakhan and Khan, but Akilah Farrakhan, Farrakhan's wife, and Andre Saunders, Farrakhan's brother, neither of whom was indicted.
 
 
 5
 Three acts by Khan would support a jury conclusion of his participation in the conspiracy within the above time frame: he filed a false return claiming a refund, he negotiated a check made out to a fictitious person, and he made statements to the Internal Revenue Service ('I.R.S.') that he knew were false. The government alleged that Khan knowingly filed a false 1040A return claiming a refund, based in part on the fact that Khan knew that he had not received wages from Farrakhan's business even approximating the $4,500 on the return (Khan's return claimed that $903 had been withheld on the $4,500 wages). Evidence in support of Khan's knowledge included his statement on a loan application to Wayne State University that he had no income other than Social Security, and the fact that Farrakhan's business was a failing enterprise that was unable at times to pay its rent. The second act that would support Khan's involvement in the conspiracy was his negotiation of a Michigan income tax refund check payable to Maulana Sharrieff. Sharrieff was purportedly an agent and stockholder of Khan Enterprises. In actuality, Sharrieff was an alias used by Farrakhan. The check gave as Sharrieff's address the Wilshire residence where Khan himself lived. Nevertheless, when Farrakhan gave Khan the endorsed check, Khan signed and cashed it. Finally, in June of 1982 when the I.R.S. asked Farrakhan to present subpoenaed records, Khan voluntarily came along. The agent asked Khan to come again the next day, when Khan attempted to further the conspiracy with false or equivocal statements, allegedly to secure refund claims as yet unpaid. The fact that the government had already frozen the accounts does not operate to terminate the conspiracy. The court concluded that there was sufficient circumstantial evidence from which a jury could conclude that Khan knowingly and wilfully became a part of the conspiracy. Based on the foregoing, we see no error in that conclusion.
 
 
 6
 As to Farrakhan, the court noted that although he was overwhelmingly the central figure in the scheme, there was sufficient evidence of the participation of Khan and/or others to constitute a conspiracy. Of necessity this ruling is not error either, given the analysis above. Therefore the District Court's denial of defendants' motion for acquittal of the charge of conspiracy must stand.
 
 II.
 
 7
 Defendants next charge error in the court's denial of their challenge for cause of juror Bobby Jack Jones. Although Jones did make one comment in his rather lengthy voir dire examination that suggested he might not be 'totally impartial,' the United States Magistrate conducting the jury selection proceedings sufficiently clarified Jones' comment and adequately assured that Jones was prepared to 'afford these Defendants the presumption of innocence.' The Supreme Court has held that the standard of impartiality must not be impossibly high: '[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' Irvin v. Dowd, 366 U.S. 717, 723 (1961). We find no abuse of discretion in the court's overruling of defendants' motion to exclude Jones for cause.
 
 III.
 
 8
 Similarly, we find no abuse of discretion in the court's denial of defendants' motion to exclude the testimony of Akilah Farrakhan. She testified under an informal grant of use immunity; the government characterized her as an unindicted co-conspirator. She testified, among other things, to certain communications between herself and defendant Farrakhan. Defendants objected to her testimony on the ground of the privilege of inter-spousal communications.
 
 
 9
 The marital privilege was modified by the Supreme Court in Trammel v. United States, 445 U.S. 40 (1980). Only the testifying witness can assert the privilege against adverse spousal testimony. Id. at 53. The privilege was preserved to the extent of protecting inter-spousal communications, however. Id. at 45 n.5. See Blau v. United States, 340 U.S. 332 (1951). The District Court ruled that an exception to the privilege, namely that the marital relationship was no longer in existence, operated to bar defendants' objection in this case. Husband and wife were separated at the time of the communications, and at the time of the trial a divorce action was pending. Moreover, defendant Farrakhan had remarried by the time of the trial. The District Court noted that the privilege was based on the common law, not the constitution, and ruled that the policy behind the privilege, the preservation of marriages, was absent in this instance. This Court finds no abuse of discretion in that ruling.
 
 
 10
 Furthermore, the court below noted that a second exception would apply, as the communications were made in furtherance of criminal activity. See United States v. Sims, 755 F.2d 1239, 1243 (6th Cir.), cert. denied, 105 S. Ct. 3533 (1985). Conversations involving 'joint ongoing or future patently illegal activity' fall outside the privilege. Id. The Court finds no abuse of discretion in this alternative ruling.
 
 IV.
 
 11
 Finally, defendant Khan objects to the jury instructions in one instance. The court instructed the jury in part as follows:
 
 
 12
 Before you may find that a defendant has become a member of the conspiracy, the evidence in the case must show beyond a reasonable doubt that the conspiracy was knowingly formed and that a defendant, or other person who is claimed to have been a member, wilfully, participated in the unlawful plan, with the intent to advance or further some object or purpose of the conspiracy. In determining whether a conspiracy existed, or whether the defendant became part of a conspiracy, the jury may consider the actions and statements of all of the alleged participants.
 
 
 13
 Tr. 770-71. The last sentence is objectionable, according to Khan, as it allows the jury to consider the actions and statements of all the alleged participants in determining whether Khan became a member of the conspiracy. Defense counsel did not object to the instruction at trial. Accordingly, Fed. R. Crim. P. 30 bars Khan's assignment of error. This Court may not grant relief unless defendant demonstrates plain error, which requires a finding that 'taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice.' United States v. Piccolo, 723 F.2d 1234, 1241 (6th Cir. 1983), cert. denied, 104 S. Ct. 2342 (1984). The Court finds no plain error as none of the evidence that the jury might possibly have considered in light of this instruction, that it would not have considered had it been told to look only to Khan's own statements and actions to determine whether or not he became part of the conspiracy, was prejudicial to Khan.
 
 
 14
 To the extent that Khan feared the jury would confuse the evidence as to the two defendants, his complaint is unfounded because the court did generally instruct the jury to consider the evidence against each of the defendants separately. Defendant did not move to sever the trial. However, Khan did object to certain testimony and exhibits and claims that it is the admission of this evidence that made it possible, in conjunction with the jury instructions above, for the jury to err in their deliberations. The Court finds that the District Court did not err in its rulings on the admissibility of the testimony and documentary evidence in question, and that therefore the District Court did not commit plain error in its instruction to the jury.
 
 
 15
 Khan contends that certain hearsay statements were erroneously admitted into evidence at trial. The District Court believed that no hearsay statements by co-conspirators were actually admitted into evidence. The court so believed because certain exculpatory statements Khan made to I.R.S. agent Randall Stillings during a June, 1982 investigation were deleted from Stillings' testimony at trial. The court found that had any such statements been offered, a preponderance of the evidence established that the statements were made in the course of and in furtherance of the conspiracy, as required by the Enright-Vinson doctrine. Id. United States v. Enright, 579 F.2d 980, 986 (6th Cir. 1978); United States v. Vinson, 606 F.2d 149, 153 (6th Cir. 1979), cert. denied, 444 U.S. 1074 (1980). Khan now claims that certain statements Farrakhan made to Stillings during the investigation, which were testified to by Stillings at trial, were hearsay, and that no Enright-Vinson ruling was made to those statements. The District Court correctly determined that no such ruling was necessary because the statements did not implicate Khan. As party admissions, they are admissible against Farrakhan under Fed. R. Evid. 801(d)(2). Khan himself admits, in his brief, that the statements concerned only Farrakhan's joint tax returns with his wife and his tax preparation business. Similarly, testimony by Akilah Farrakhan, admissible against her husband (see also Part III supra), did not implicate Khan. Khan did not request a limiting instruction in either case. These statements were properly admitted, and do not constitute plain error when viewed in conjunction with the jury instructions.
 
 
 16
 Khan also objected to many of the documents offered by the government, principally on the ground of relevance because the documents concerned only defendant Farrakhan and Farrakhan's business dealings. Khan also objected on the ground of hearsay. The documentary evidence was clearly relevant to prove that the business was a failing enterprise with fabricated records and fictitious employees and that the tax returns in question were false. As to the hearsay objections, the documents are either not hearsay (because not offered for the truth of the material contained therein or because a Fed. R. Evid. 801(d)(2) party admission) or they fall into one of the exceptions of Rule 803, particularly subsections (6), (8), or (10): records of regularly conducted activity, public records, or absence of public record, respectively. The vast majority of Khan's objections are without merit as the evidence is clearly admissible. Only two rulings require discussion.
 
 
 17
 The first involves I.R.S. tax returns. These returns are not hearsay because they were not offered for the truth of the material contained therein. 'Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted.' Anderson v. United States, 417 U.S. 211, 219 (1974). In fact, the premiss of the government's case was that the returns were falsified.
 
 
 18
 The second involves 'certified transcripts,' or computer printouts of I.R.S. records, offered to show that some taxes had never been paid by Farrakhan's business. Khan cites United States v. Ruffin, 575 F.2d 346 (2d Cir. 1978), which held that the admission into evidence of an I.R.S. computer printout as a public record under Fed. R. Evid. 803(8)(B) and (C) was error because I.R.S. agents are law enforcement personnel and the transcript was a report sought to be introduced against the accused. The error was ruled harmless however. Other circuits have examined the issue and held that I.R.S. account transcripts are admissible. United States v. Bode, 688 F.2d 1004, 1005 (8th Cir. 1982) (grounds for admissibility not given); United States v. Neff, 615 F.2d 1235, 1241-1242 & n.7 (9th Cir. 1980) cert. denied, 447 U.S. 925 (under Fed. R. Evid. 803(10)); United States v. Cepeda Penes, 577 F.2d 754, 761 (1st Cir. 1978) (distinguishing Ruffin on ground that the limitations of Rule 803(8) pertaining to the inadmissibility of public records as against a criminal defendant are not included in negative certification under Rule 803(10)). We hold that the certified transcripts in the form of computer printouts are admissible under Fed. R. Evid. 803(10), absence of public record or entry. As there was no error in the admission of the documents or testimony contested by Khan and the court did instruct the jury to consider the evidence against each defendant separately, the Court finds no plain error in the jury instruction challenged.
 
 
 19
 For the reasons stated above, the Court affirms the judgment of conviction.
 
 
 20
 CONTIE, Circuit Judge, concurring in part, dissenting in part.
 
 
 21
 I concur in Parts II and III of the majority opinion and in the opinion's conclusion that there was sufficient evidence to support the convictions of defendant Farrakhan. However, I conclude that the evidence was insufficient with respect to defendant Khan, and, accordingly, do not reach the issues raised by Part IV of the majority opinion. For the reasons that follow, I dissent.
 
 
 22
 It is a fundamental precept of due process 'that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof--defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.' Jackson v. Virginia, 443 U.S. 307, 316 (1979). 'The evidence is to be viewed in the light most favorable to the Government. . . . Further, every reasonable inference from the evidence must be drawn in the Government's favor.' United States v. Strong, 702 F.2d 97, 99-100 (6th Cir. 1983) (citation omitted). It is an essential element of the crime of conspiracy that the accused willfully become a member of the conspirary. United States v. Thompson, 533 F.2d 1006, 1009 (6th Cir.), cert. denied, 429 U.S. 939 (1976). The government's failure by direct or circumstantial evidence to establish that Khan willfully joined the conspiracy or knowingly filed a false return renders the convictions constitutionally void.
 
 
 23
 The conspiracy allegedly centered around Khan Enterprises, Inc., a small store front record shop and boutique owned and operated by appellant Farrakhan. Khan Enterprises was incorporated in 1977. Farrakhan's wife and children were listed as incorporators. Farrakhan also operated a tax preparation service out of the store. Farrakhan's wife, Akilah, testified that Maulana Sharrieff was an alias used by Farrakhan.
 
 
 24
 The returns in the names of Sharrieff and Khan listed Khan Enterprises as the employer. In addition to the government's contention that Sharrieff did not even exist, the government also contends that Khan's returns were falsified because the amounts reported as withheld were unusually high, had never been paid to IRS, and further that the earnings declared from Khan Enterprises were questionable due to the company's poor financial condition.
 
 
 25
 Khan was an employee of Khan Enterprises. According to his earnings record he earned $86.54 gross pay per week on a stand by basis. This netted him $50.83 per week. He testified that although he did not actually receive his pay every week the records were accurate. Appellant Farrakhan prepared Khan's 1981 1040A return. Khan signed it, and it was filed in January of 1982. This was Khan's first tax return and he testified that he did not doubt the accuracy of the return at that time. Khan declared wages of $4,500, withholding of $907, and claimed a refund of $584 which he subsequently received and deposited in a savings account.
 
 
 26
 In February of 1982 Khan received from Farrakhan a State of Michigan income tax refund check payable to, and purportedly endorsed by, Maulana Sharrieff which was supposedly payment for back wages. Khan endorsed this check and also deposited it in his savings account. The check had been originally sent to Khan's address. Khan testified that although the check was payable to Maulana Sharrieff and had been sent to Sharrieff at Khan's address he had never seen Sharrieff.
 
 
 27
 In June of 1982 the IRS issued a summons to Farrakhan for the production of payroll records and handwriting exemplars. Khan accompanied Farrakhan when he responded to the summons. Khan was asked to return the next day to answer questions regarding the investigation and he did. Although he was told he was only a witness in the investigation of his brother, he was advised of his rights since he could potentially become an object of the investigation. Khan agreed to answer questions on a question-by-question basis. Randall Stillings, a Special Agent with the Criminal Investigation Division of the IRS, testified that Khan said he knew Maulana Sharrieff and that Khan could only describe Sharrieff in an evasive manner.
 
 
 28
 In support of the verdict, the majority and the government cite (1) Khan's filing of a false return for a refund; (2) Khan's negotiation of a check made out to a fictitious person, and (3) Khan's false statements to the IRS. The government argues that Khan knew he filed a false return because he knew he did not earn $4,500 in wages from the business. While, of course, this is a theoretical possibility, the government failed to prove that the business could not have paid Khan $4,500 in 1981 or that Khan could not reasonably have believed that he was paid that amount. Further, the fact that Khan accepted and negotiated a state income tax refund check payable to Maulana Sharrieff as payment for his services does not prove willful participation in the conspiracy alleged. There is no evidence that Khan knew that Sharrieff was a non-existent person or that the check was obtained by illegal means. Finally, Khan's 'equivocal' statements to the IRS alone do not provide sufficient evidence of criminal conspiracy to sustain the conviction. While circumstantial evidence and inferences from proven facts may be utilized in proving a case, hypothesis is no substitute for evidence, nor is conjecture a substitute for facts.
 
 
 29
 Accordingly, the convictions of defendant Khan should be REVERSED.
 
 
 
 *
 Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation